BOSWELL et al. v. LAIRD et al.

|  |  |
|---|---|
| 8 | 469 |
| 81 | 267 |

|  |  |
|---|---|
| 8 | 469 |
| 96 | 16 |

|  |  |
|---|---|
| 8 | 469 |
| 102 | 223 |
| 102 | 249 |

|  |  |
|---|---|
| 8 | 469 |
| 131 | 129 |

|  |  |
|---|---|
| 8 | 469 |
| 138 | 118 |

Where parties employed architects, reputed to be skilled in their profession, to construct, at a designated point on a creek, a dam, or embankment, of certain specified dimensions, capable of resisting all floods and freshets of the stream for the period of two years, and to deliver it completed by a given time; and before the embankment was completed it was broken by a sudden freshet, and a large body of water, confined by it, rushed down the channel of the stream, carrying away and destroying, in its course, the store of plaintiffs, with their stock of merchandise. The employers exercised no supervision, gave no directions, furnished no materials, nor had they accepted the work. Plaintiffs having brought suit to recover the damage sustained by them, against the employers and contractors : *Held,* that the latter alone were liable.

The relation of the parties is that of independent contractors; the relation of master and servant, or superior and subordinate, did not exist between them, and therefore the doctrine *respondeat superior* does not apply to the case.

The architects alone were responsible to third parties, the defective construction which caused the injury not being inherent in the original plan contracted for. If the plan of this work had been devised by the owners, and the builders simply engaged to carry it out, and the defects from which the injuries resulted had been inherent in the plan, then the former would have been liable to plaintiffs.

A person who undertakes the erection of a building, or other work, for his own benefit, is not responsible for injuries to third persons, occasioned by the negligence of a person, or his servants, who are actually engaged in executing the whole work, under an independent contract.

The right of selection is the basis of the responsibility of a master or principal, for the acts of his agent. No one can be held responsible, as principal, who has not the right to choose the agent from whose act the injury flows.

After acceptance of the work, or construction, by the person for whom it was built, he becomes liable for subsequent injuries, having thus assumed the responsibility of its sufficiency ; and the liability of the contractors ceases.

Where the enterprise undertaken is a lawful one, and is entrusted to competent and skillful architects, the mere fact that the improvements are erected upon the land of the proprietor is no just reason why liability should attach to him, during its progress, any more than if such enterprise be executed elsewhere.

APPEAL from the District Court of the Fourteenth Judicial District, County of Nevada.

In June, 1856, the defendants Laird and Chambers contracted
31

with their co-defendants, Moore and Foss, the latter being architects, of reputed skill and experience, for the construction of a dam, forty feet in height, on Deer Creek, at a point several miles above the city of Nevada. The design of this dam was to force an accumulation of the waters of said creek, at that point, so as to fill a basin of about one hundred acres, immediately above the dam, with water, that could be used for mining purposes, during the summer season.

Under the contract, Moore and Foss bound themselves to construct across said stream, at their own expense of money, material, and labor, a dam, or embankment, forty feet high, of substantial material and skillful workmanship, capable of resisting all floods and freshets, for the period of two years from its completion, and to deliver the same to defendants Laird and Chambers, complete, on or before a given time, guarantying it to withstand the floods and freshets, for such period from its completion.

Laird and Chambers bound themselves to pay to Moore and Foss certain sums of money, as the work progressed, and upon the completion of the dam, according to the stipulations, to accept and receive the same, and pay them the balance due under the contract.

Moore and Foss commenced work on the dam in July, 1856, ceased for a short time, recommenced in October, 1856, and from that time continued, according to their own model and plan, to construct the dam.

On the fifteenth of February, 1857, before the work was wholly completed, and before it had been accepted by Laird and Chambers, it was carried away by a sudden storm and freshet.

The plaintiffs in this cause, Boswell & Hanson, were merchants in the city of Nevada, and had in the month of September, 1856, erected a store on the margin of Deer Creek, and put therein a large stock of goods.

When the dam, on the fifteenth of February, 1857, broke away, a great volume of water was loosened in the channel of the creek, and, sweeping down in a torrent, the waters carried away and destroyed the building, store, and stock of goods belonging to plaintiffs. The testimony showed that Laird and Chambers had not been at the dam from the day of the commencement, until after the breakage; that they prescribed no plan for its construction, furnished no materials, neither employed nor directed any hand engaged upon the work, nor took any part in, or control over the same; had not received the work from the contractors, nor had Moore and Foss completed the work, nor delivered or tendered the same to Laird and Chambers, at any time before the injury to plaintiffs occurred.

It further appeared, on the trial, that about fifteen hours before the dam gave way, word was sent to plaintiffs of the an-

ticipated danger, and that no attention was paid to the warning. On the conclusion of plaintiff's testimony, counsel for defendants Laird and Chambers, moved the Court below for a nonsuit as to them, which motion the Court overruled, and defendants Laird and Chambers excepted.

After the evidence was finished, the Court was asked by defendants, (among others,) to give the following instructions to the jury, which being refused, the defendants Laird and Chambers excepted.

" Where one or more persons engage for the construction of a work or dam, with contractors to whom are given the entire control of the work, the selection of the mode and model, and the choice and employment of the hands assisting, such person or persons so engaging, are not responsible in law, for damages resulting from the negligence or unskillfulness of such contractors, or of any of their hands about such work. And if from the evidence, the jury believe, that under the contract between Laird and Chambers, of the one side, and Moore and Foss of the other, for the construction of the dam across Deer Creek, Moore and Foss acted under an independent employment, had the sole control of the work, and the manner of its building, the employment and management of the hands engaged thereon, and that Laird and Chambers had not received the dam from such contractors before it broke, the jury will find for the defendants Laird and Chambers.

" Where one or more persons engage for the construction of a work, with contractors to whom are entrusted the sole and entire direction and control of the work, as well as the employment and management of all assistants, the relation of principal and agent, or master and servant, does not exist between such persons, and such contractors, and such persons are not responsible for any negligence or unskillfulness of such contractors, or those employed by them."

The Court, at the request of plaintiffs, (among others,) gave to the jury the following instruction, under the exceptions of Laird and Chambers' counsel : " That if the defendants Laird and Chambers employed the defendants Moore and Foss to construct the dam referred to in the pleadings and evidence in this cause, at the point where the same was erected, and such dam gave away and broke by reason of its unskillful construction, and an injury resulted therefrom to plaintiffs, then that defendants Laird and Chambers are liable in this suit."

The jury found a verdict for plaintiffs, of five thousand dollars, on which, judgment was rendered against all the defendants, who moved for a new trial, which being denied, they appealed.

*H. Meredith* for Appellants.

Where defendant's house was injured, by means of excavation,

for improvements on an adjoining lot, defendant cannot recover, where he was warned and took no measures to protect himself and prevent the injury. 12 Liv. Law Mag., 5,701; Dunlap *v.* Wallingford, Penn. Sup. Co. R., 1854.

The exception next arising on this appeal, for the consideration of this Court, is that taken to the order of the Court below, overruling the motion for nonsuit as to Laird and Chambers, defendants; the grounds assigned for said motion being, as set forth in statement of case of transcript, to wit: that the evidence before the jury showed that defendants Laird and Chambers were not liable for the injuries complained of; their connection with the construction and maintenance of the dam, the breakage of which occasioned the injury, being only by means of a contract with defendants Moore and Foss, under an independent employment, and one clearly excluding the relation of master and servant, or principal and agent; the contractors being engaged upon the work, and having entire control and management of the same at the time of such breakage.

This proposition involves a principle of importance far beyond its effect upon this case, or the interest of the parties immediately concerned.

Upon the maintenance, by our Courts, of the principle on which defendants rely in making this motion, the mechanical skill and industry, as well as the development of the resources and wealth of our people and country, greatly depend. To encourage science and skill in the mechanical arts, an avenue to an independent position, above the degree of servant or agent, should be secured and recognized for the proficient. Capital should be allowed without hazard, to contract with the scientific and skillful, for the performance of any work peculiarly belonging to their department. Inducements of constant and powerful operation may be thus held out to all, to acquire superior proficiency in any given line of the mechanical arts. The most proficient become the most sure of employment and reward.

On the contrary, if capital, contracting for the erection or construction of a given work, is to be held responsible for the failures and omissions of the contractor, under all circumstances and phases of bargains, capital must become, in all transactions, the superintendent—and the proficient in any trade or art, be confined to the common level of the ignorant and incompetent.

In thus taking away the rewards and encouragements for proficiency, all progress and advancement in the great arts which make a people and nation wise, wealthy, powerful, and prosperous, are impaired, if not entirely destroyed.

The work to be performed in this case, was the construction of a frame dam or embankment, to accumulate the waters of a stream, for useful and lawful purposes. A knowledge, not merely of the business of the carpenter and joiner, but of the science of

hydrostatics and hydraulics, as also the relative strength of the various materials, was necessary to its due performance.

Laird and Chambers, who were merely miners, would have been deemed reckless had they undertaken, unaided, such a work. The law required, greater prudence on their part, and what reason and law required, they did. They employed experienced and skillful workmen to construct the dam according to the rules established by their experience and learning, under an independent employment, leaving the whole to their control, they to pay for the same, and to accept the same upon its completion.

In preserving the encouragements for proficiency in mechanical industry, the best and surest way is kept open to the rapid and full development of the natural wealth of the land. If capital cannot avail itself of skill and science without risk, and the necessity of personal superintendence, under an independent employment and contract, it will remain idle and unexpended, and the immense works, such as damming streams and torrents, and the lakes of our mountains, necessary to the prosperity of our State, remain forever objects of our dreams instead of realities. The mineral region of California is the field where industry looks for its reward; the gold embosomed in the sands and rocks of our mountains, the life-blood which fills the veins of commerce and enterprise; and water, the indispensable element to make those mines fruitful, and to cause the gold to flow, Heaven, in its bounty, supplies an abundance during the year, but too much comes at one season, and too little at another. It is left for man's ingenuity and energy to arrest the escaping surplus of water, and confine it for profitable use in summer.

To secure this desideratum, common alike to all of the land, no business, trade, or art, should be more carefully protected— proficiency in none more generously encouraged, than the art of building dams, reservoirs, aqueducts and embankments, those means of man in controlling water, the main lever of our industry and prosperity.

The evidence of the plaintiffs clearly established, that the relation of master and servant, or principal and agent, did not exist between Laird and Chambers, and Moore and Foss, the contractors and builders.

Laird and Chambers could only be held by the doctrine of *respondeat superior*, and that applies solely where the relation of principal and agent exists.

No responsibility can fasten itself upon them, as an incident to their ownership of the soil on which the dam was being constructed, as has been adjudged to do, where a fee-simple owner suffered a nuisance on his land.

Laird and Chambers had no legal right whatever over the ground or soil—having no deed to it—no patent, and having

made no location of a warrant or claim to any given spot or quantity of ground, under any existing law. They had neither title, color of title, or possession. Such being the facts and circumstances, as 'shown by plaintiffs' own evidence, we contend there was nothing to submit to the jury in the case, as to defendants Laird and Chambers, and defendants' motion for a nonsuit should have been granted.

A person agreeing for a specific construction with a contractor, under an independent employment, to whom is given the entire control of the work, the selection of those by whom, and the manner how it shall be done, does not stand in the relation of master and servant, as to such contractor, and is not responsible for damages arising from the negligence of such contractor, or any employee of such contractor. Pack v. The Mayor, etc., of New York, 4 Selden R., 222 ; Blake v. Ferris, 1 Selden, R., 48; Kelly v. The Mayor, etc., of New York, 1 Kernan R., 432; De Forrest v. Wright et al., 2 Mich. (Gibbs,) R., 368; Moore v. Seaborne et al., ib., (Gibbs,) R., 530; Quarman v. Burnett, 6 Meeson & Wels. R., 510; Helbitt & Reider v. The N. W. Railway Co., 4 Exch., 254.

To render one person liable for the negligence of another, the relation of master and servant, or of principal and agent, must exist between them. Stevens v. Armstrong et al., 2 Selden R., 435; City of Buffalo v. Holloway, 3 Selden R., 493; Sproule v. Hemminway, 14 Pick. R., 1. Story on Agency, § 453, b and c.; Helbitt & Reider v. The N. W. Railway Co., 4 Exch., 254 ; 13 Jurist, 659.

The evidence of plaintiffs proved that Laird and Chambers contracted solely with Moore and Foss, for the completion, in a given time, of a work which was never completed, nor tendered to them, and that the work gave way while being erected by thirteen or seventeen others, who were solely employed by Moore and Foss, the contractors. These hands or employees of Moore and Foss, were the persons guilty of the negligence, if any was committed. Moore and Foss alone can be held responsible for their acts. Moore and Foss were their principals, and that precludes the idea that Laird and Chambers were.

There cannot be two superiors or principals at the same time, and where the employee commits the negligence, the responsibility is that of the immediate employer. Blake v. Ferris, 1 Selden R., 48; Pack v. The Mayor of N. Y., 4 Selden, 222; Laugher v. Painter, 5 Barn. & Cres. R., 558.

Where an employee is exercising a distinct and independent employment, and is not under the immediate control, direction, or supervision of the employer, the latter is not responsible for the carelessness or negligence of the employee. De Forrest v. Wright et al., 2 Mich. R., 368.

In such cases, the contractor alone is responsible for negli-

gence arising from his conduct, or that of his employees; and "when one contracted to cut logs the employees had on certain land, and to deliver them without assistance or supervision of or from the employees, the relation of master and servant does not exist, and the employee alone is liable for any injury occasioned to others, by his conduct in performing his contract. Moore v. Seaborn, 2 Mich. R., 520; Helbitt v. N. W. Railway Co., 4 Exch. R., 256; Allen v. Hayward, 7 Owen's Bank. R., 970.

The fact that the employer selected the employee does not determine or conclude the responsibility of the former. The power of direction, control, and management, must be left with the primary employer, although he selected his employee. Kelly v. Mayor, etc., of N. Y., 1 Kernan R., 436; Helbitt v. N. W. R. Co., 4 Exch. R., 258.

"The proposition that a person shall be answerable for any injuries which arise in carrying into execution that which he has employed another to do, seems to be too large. His liability depends upon the nature of the employment, the occupation of the person employed, and the control and authority of the employee over the persons employed, as well as over the manner of the execution of the employment, as also upon the occasion and nature of the injury." Moore v. Seaborn, 2 Mich. R., 530.

"A master is responsible for the acts of his servant, but that a person is liable, not only for all the acts of his servant, but for any injury which arises by the act of another person, in carrying into execution that which that other person has contracted to do for his benefit, is too large a position—cannot be maintained without overturning some decisions, and must lead to consequences which would shock the common sense of all men." O—— v. Burnett, 6 Meeson & Wels. R., 510.

The relation of master and servant has been constructively raised, by drawing a distinction between real property and personal, and the owner of real estate deemed the master of all engaged on his land. Laird and Chambers were not the owners of a foot of the land, and this doctrine constructively arising— this relationship cannot apply to this case, but we reply to the attempt to make it apply, by saying, that the doctrine has been long since abandoned and overruled—at least, so far modified that it cannot now affect the rights or responsibilities of the defendants Laird and Chambers.

"The owner of real estate is not answerable for acts of carelessness, negligence, and mismanagement, committed upon or near his premises, to the injury of others, if the conduct of the business which causes the injury is not on his account, nor at his expense, nor under his orders or official control." Earle v. Hall, 2 Metcalf R., 353.

A distinction has been made between fixed and real property and personal chattels, in establishing the relation between mas-

ter and servant, but that distinction is now abolished, except when the act complained of, amounts to a continuing nuisance. De Forrest v. Wright et al., 2 Mich. R. 372; Helbitt (and Reider) v. N. W. Railway Co., 4 Exch. R., 254; Blake v. Ferris, 1 Selden R., 62, 63, 64, 65.

Laird and Chambers, defendants in this case, neither owning nor occupying the land on which the dam was being erected, cannot be held responsible as proprietors for the negligence of those building the dam. The foundation of the common law responsibility not existing, the rule does not apply. *Cessante ratione legis cessat ipsa lex.*

By the common law, *sic utere tuo ut alienum non lœdas,* is a maxim expressing an obligation, but that maxim being based upon the ownership of the soil, its application was not recognized by this Court, in the case of Tenny et als. v. The Miner's Ditch Co., (April Term, 1857, similar, in some important particulars, to the present,) for the reason that both parties were upon the public lands. The refusal of the instructions last referred to, entitles defendants to a reversal of the judgment, and a new trial.

*McConnell & Niles, and A. A. Sargent,* for Respondents.

It is contended, we believe, by the appellants, that Laird and Chambers are not liable in these actions, because the work of erecting the dam was performed by Moore and Foss, under a contract—and for the additional reason, that at the date of the breaking of the dam, it had not been completed nor accepted by them.

They place this supposed exemption from liability of Laird and Chambers, upon the following grounds, viz.:

1. Because the relation of master and servant did not exist between Laird and Chambers on the one hand, and Moore and Foss on the other.

2. Because Laird and Chambers exercised no control over the work during its progress.

3. Because the dam and reservoir, of which it formed a part, were situated on land belonging to the government.

4. As before stated, because the dam had not been entirely completed, and delivered over to Laird and Chambers at the time of the disaster.

In reply to the positions of the appellants, we advance the two following propositions, viz.: That the relation existing between Laird and Chambers, and Moore and Foss, was such as to render the former liable for the negligence of the latter, in respect to the building of the dam.

And also, that these cases do not depend so much upon the law, as to master and servant, as they do upon the more general principle, that every man is liable for nuisances, or struc-

tures in the nature of nuisances, erected upon his own property.

We now propose, in support of the first proposition, to take up, for the consideration of this Court, the various decisions rendered in this country and in England, which have a direct bearing upon the principle of *respondeat superior*, and in so doing, shall briefly offer such comments as occur to us.

The first decision in point of time, to which we shall refer, is Lord Lonsdale's case, 2 Henry Blackstone's R., 268–299. The principle can be gathered only from the pleadings, which are reported at length. From them it appears that the defendant, Lord Lonsdale, owned certain coal mines, and contracted with another person to work them. The house of the plaintiff, having been injured in consequence of the careless manner in which the mines were worked by the contractor, he brought an action against his lordship for the damages, and recovered judgment against him, which was affirmed on appeal to the House of Lords.

In Stone et al. *v.* Cartwright, 6 Term Rep., 411, it was held, that an action for injury, caused by the negligent working of a coal mine, must be brought against the owner of the mine, or the immediate agents, by whose act the injury originated, and not against the intermediate contractor.

We shall next invite your Honors' attention to the leading case of Bush *v.* Steinman, 1 Bosanquet & Puller, 402, and we do so with the greater confidence, because the opinion there rendered by the Court, besides the respect due to it as a precedent emanating from a very high source, is further recommended to our favor by the vein of strong logical reasoning which pervades it.

The defendant Steinman, having purchased a house by the roadside, (but which he had never occupied,) contracted with a surveyor to repair it for a stipulated sum. A carpenter, having a contract, under the surveyor, to do the whole job, employed a bricklayer under him, and he (the bricklayer) again contracted for a quantity of lime, with a lime-burner, by whose servant the lime in question was placed in the road. The plaintiff and his wife, riding in a chaise, were overturned and injured by the heap of lime.

Here, it will be observed, that between the defendant and the person actually committing the wrong, viz.: the lime-burner's servant—five several and independent sub-contracts intervened, viz.: the contract with the surveyor—the surveyor's contract with the carpenter—the carpenter's contract with the bricklayer—the bricklayer's contract with the lime-burner—and last, the lime-burner's contract with his servant. So far removed was the defendant from the act, that the Lord Chief Justice, who presided *nisi prius* during the trial, thought that no action would lie against him.

The Court of King's Bench, however, after mature delibera-

tion and thorough argument, held, without a dissenting voice, that the owner of the house was liable, and judgment was rendered in accordance with that opinion.

If ever a principle was tested by an extreme case, it was the principle of *respondeat superior* by this case of Bush *v.* Steinman. Indeed, it is scarcely possible to imagine a more extreme case. Yet the Court, acting upon the hypothesis that the defendant's own volition was the primary, if not the proximate cause of the injury, sustained the action against him.

He (defendant) set in motion the machinery—the chain of events—which finally resulted in the plaintiff's injury. Had he not owned the house and engaged the surveyor to repair, the lime would not have been placed where it would injure the plaintiffs.

By a reference to the opinions of the Judges, rendered *seriatim,* it will be seen that none of them formed their decision upon any technical relationship of master and servant, subsisting between the defendant and lime-burner's servant; but all take broader and bolder ground. The Chief Justice (Eyre) deduces the liability from the fact that the injury was done by persons working upon defendant's property, and goes on to declare, that "whether he (defendant) worked by his agents, by servants, or by contractors—still it was his work; and though another person might have contracted with him for the management of the whole concern without his interference, yet, the work being carried on for his benefit and on his property, all the persons employed must be considered as his agents and servants, notwithstanding any such arrangements, and he must be responsible to all the world on the principle of *sic utere tuo ut alienum non lædas."*

In another portion of the same opinion, his Lordship adds : " Suppose then, that the owner of a house, with a view to rebuild or repair, employ his own servants to erect a hord in the street, (which being for the benefit of the public, they may lawfully do,) and they carry it out so far as to encroach unreasonably on the highway, it is clear that the owner is guilty of a nuisance, and I apprehend there can be but little doubt that he would be equally guilty, if he had contracted with a person to do it for a certain sum of money, instead of employing his own servants for that purpose; for, in contemplation of law, the erection of the hord would equally be his act."

The learned Chief Justice concludes his opinion with the following striking and judicious remarks :

" The responsibility is thrown on the principal, from whom the authority originally moved. This determination is certainly highly convenient and beneficial to the public. When a civil injury of the kind now complained of has been sustained, the remedy ought to be obvious, and the person injured should have

only to discover the owner of the house which was the occasion of the mischief—not be compelled to enter into the concerns between that owner and other persons, the inconvenience of which, would be more heavily felt than any which can arise from circuity of action."

The concurrence of Mr. Justice Heath in the judgment of the Court, is based upon the fact "that all the sub-contracting parties were in the employ of the defendant. It has been strongly argued, (he continued,) that the defendant is not liable, because his liability can be founded in nothing but the mere relation of master and servant. But no authority has been cited to support that proposition. Whatever may be the doctrine of the civil law, it is perfectly clear that our law carries such liability much further. Thus, a factor is not a servant; but being employed and trusted by the merchant, the latter, according to the case in Salkeld, is responsible for his acts." After referring to the case of Tattersall, the proprietor of a newspaper, who was held liable for a libel inserted in the newspaper, by persons employed by the owners under a contract to collect news and compose the paper, he proceeds, in a strain similar to that of the Chief Justice, to say, that "it is not possible to conceive a case, in which more mischief might arise, than in the present, if the various sub-contracts should be sufficient to defeat the plaintiff in his action. Probably he would not be able to trace them all, since none of the parties would give him any information; and consequently he might be turned around every time he came to trial."

Mr. Justice Rooke concurred with Heath, J., and the Chief Justice, on the ground that "he who has work going on for his benefit and on his own premises, must be civilly answerable for the acts of those he employs." He then refers to a case in 2 Levison, where it was held that it would be intended by the Court, that a person having work going on for his benefit, has a control over all those persons who work on his premises; and he shall not be allowed to discharge himself from that intendment of law by any act or contract of his own.

We desire to remark, on this case, of Bush v. Steinman, that it carries the principle of *respondeat superior* much further than some of the more recent decisions seem inclined to follow it, and very much further than is required to sustain the case at bar. The original contract with the surveyor, was for repairing the house of defendant. It does not appear from the history of the case, that any necessity existed for placing the lime in the road, and it certainly was a very great stretch of the legal intendment, to say that the defendant Steinman, had in contemplation, at the time of making the contract with the surveyor, that in pursuance of the authority given by that contract, the lime-burner's servant would place the lime in the road. Indeed, it

seems to us, that the most effective answer the defendant could have made to the action, would have been, that the act of throwing the lime in the road was not so much a negligent as a willful act; and that therefore *quoad hoc*, the servant had acted without the scope of his authority.

In the case at bar, on the other hand, the contract between Laird and Chambers and Moore and Foss, contemplated, in express terms, the very act which occasioned the injury, viz.: the building of the dam. That case would be more germane to the present, if the jury had been committed by means of the identical house which was the subject of the repairs, and by reason of such repairs. As for instance, suppose the house so repaired, or while in the process of repair, had, owing to the process of repairing, fallen upon and crushed the habitation of a neighbor. Then, in the estimation of all, including those Judges who dissent from the extreme doctrine of Bush *v.* Steinman, the owner would have been liable for the injury.

To take another instance for the sake of illustration: suppose some of the servants of Moore and Foss had place the timbers used in the construction of the dam, in the road, so as to create an obstruction to travel, and a person is injured by such negligent act; then, according to the decision of Bush *v.* Steinman, Laird and Chambers would be liable for the injury—because, by legal intendment, the persons placing the timber in the road are acting as their agents or servants. But how much stronger and more convincing would be the reasons for the liability, provided the timber had been so placed in pursuance of an express contract between them and the persons doing the act? Yet this is exactly the case at bar.

Thus much for the present, as to the ruling in that somewhat celebrated decision.

In pursuance of the plan adopted, to review the principal reported cases having a bearing on this question, we shall next refer the Court to Mathews *v.* The West London Water-Works Co., 3 Campbell's Rep., 402, which, although a mere determination at *nisi prius*, is yet entitled to respect, because of the eminence and learning of the Judge (Lord Ellenborough) who made it.

It appears that the defendant (a corporation) had a contract with certain pipe-layers, to lay down pipes through the different streets of the metropolis, and that the pipe-layers hired the men actually employed to do the work. These men, in laying pipes in Tottenham Court Road, left a quantity of rubbish in the street, without any light sufficient to show it, or watchmen to warn passengers of their danger. The consequence was that the Liverpool coach, driven by the plaintiff, was overturned, his leg broken, etc. The question was, whether the action was properly brought against the water-company instead of the pipe-

layers; and Lord Ellenborough said there was no doubt of the defendant's liability.

The same observation may be made on this case that we have made on the case of Bush v. Steinman, viz. : that it carries the defendant's liability further than is necessary to sustain the case at bar; for the accumulation of rubbish is collateral or incidental to the subject-matter of the contract—the pipe-laying.

The case of Laugher v. Painter, 5 Barnwell & Creswell, 548 to 580, was as follows: The defendant, the owner of a carriage, hired a pair of horses from a stable-keeper to draw it for a day. The stable-keeper provided a driver for the horses, through whose negligence an injury was done to the horse of a third person. The Court was equally divided as to defendant's liability. It will, we think, strike this Court as it has ourselves, that the circumstances of this case bear but a slight analogy to those of Bush v. Steinman. Yet it is the case most relied upon by those who doubt the authority of that decision. It will be observed, however, that neither Abbot, C. J., nor Mr. Justice Littendale, who deny the liability of the owner of the carriage, attempt to invalidate the general reasoning of Bush v. Steinman. They merely deny its applicability to the case then under consideration. Indeed, there could be no difficulty in deciding for the defendant, without unsettling a single principle embraced in Bush v. Steinman; for it was not the case of a person engaging another by contract to do a certain act, from the doing of which an injury resulted; but a mere arrangement by which the property and servant of one individual became, for a brief period of time, subject to the convenience of another; and to hold that other liable would not only, as a principle, contravene all our notions of justice, but would, as a rule, be far too inconvenient and impracticable for the daily purposes of life. For if the owner of the carriage, in the case cited, is liable, why not, as was very properly remarked by Tindal, arguendo, hold the passengers in a stage-coach liable for an injury resulting from careless driving?

In Smith v. Lawrence, 2 Manning & Ryland, 1, this point was again before the Court, and it was held that the owner of the horses and master of the postillions, was liable to the owner of the carriage for an injury caused by careless driving.

The case of Fenton v. The City of Dublin Steam Packet Co., 8 Adolphus & Ellis, 541 to 545, was a case of injury to a vessel from a collision with a steamboat. The boat was the property of the defendant, but had been chartered to Dails. The defendant, by the charter-party, reserved the right to furnish the crew of the boat, and did, in fact, furnish it. The Court held that the defendant was liable; but they do not decide that Dails, the charterer, would not also have been held liable had he been sued. On the contrary, they seem to admit the liability of both defend-

ant and Dails, for Lord Denman remarks, that "the question is not whether the charterer is liable, but whether the owners, who have let him have the benefit of the vessel, are liable for the negligence of the servants whom they have put on board for him. It does not turn on that question. The charterer may be answerable also." And Patterson, Justice, declares, "it is not inconsistent to hold the hirer and letter both liable."

We first refer the Court to the cases decided in Massachusetts.

The case of Earle *v.* Hall, 2 Metcalf, 356, was, in substance, as follows:

Hall, the defendant, had entered into an agreement with one Gilbert, for the sale of a lot of land, upon which Gilbert was to erect, at his own expense and upon his own responsibility, a brick house. Hall agreed to make conveyance to Gilbert upon payment of the consideration money. Afterwards, Hall, having received the consideration money, did actually execute the stipulated conveyance to Gilbert, who mortgaged the premises to some third parties to secure the payment of a debt to them. The workmen employed by Gilbert, while engaged in the preparatory excavations, dug out the earth under the wall of plaintiff's house, which adjoined the lot sold by Hall.

The decision of the Court is against the liability of Hall, but the reasoning adopted, fully sustains the position assumed by us.

The Court, after referring to the principal English authorities, said:

"The general principle to be extracted from the cases, in regard to the use of real property, is that the owner of real estate, either absolutelely or for the time being: he who has the management and control, and takes the benefit and profit of the estate; he at whose expense and on whose account the business is carried on—shall be responsible to third persons for the carelessness, negligence, or want of skill of those who are carrying on or conducting the business by which they are damnified; and this, whether the person thus employed and engaged are working on wages or by contract; and whether they are employed directly by the principal or by a steward, agent, or manager, having the superintendence of his estate. Several principles of law seem to be referred to as the source of this responsibility. One is, that he who does an act by another, does it himself. Though not the work of his hands, it is the result of his will. His mind, his intent, and his purposes, are the efficient cause of the operations conducted by others. Therefore, it is he, who in the conduct of his own business, causes the damage complained of, and it is of him that redress shall be obtained."

Again, the Court said, "another well recognized principle is, that every one shall so use his own property, as not in the man-

agement of it to hurt that of another. Having the power to determine what agents shall be employed—what business shall be carried on upon the estate of which he has either the ownership or the enjoyment and possession—it is alike the dictate of justice and public policy, that he shall be responsible for the conduct of those whom he may employ or dismiss, and whose movements he may have the power to direct," etc.

These remarks of that able bench, fully illustrate and explain the theory of our right of redress against Laird and Chambers.

The case of Stone v. Codman, 15 Pickering, 297, is still more strongly in point for respondents than the foregoing case.

" The defendant employed a mechanic to make a drain for him, on his own land, and extending thence to a public drain; the mechanic procuring the necessary materials, hiring laborers, and charging a compensation for his services and disbursements."

By means of the drain-ditch, constructed in pursuance of this arrangement, water was let into plaintiff's cellar and destroyed certain of his goods, etc. The Court said :

" We are of opinion, that if Lincoln, the contractor, was employed by the defendant to make and lay out a drain for him on his own land, and extending thence to the public drain, he, Lincoln, procuring the materials, employing laborers, and charging a compensation for his services, etc., he must be deemed, in a legal sense, to have been in the service of the defendant, to the effect of rendering his employer responsible for want of skill, or want of due diligence and care—so that if the plaintiff sustained damage by such negligence, the defendant was responsible for such damage."

We will call attention to the case of Yates v. Brown, 8 Pickering, 24, which, at first glance, may not seem strongly in point, as it concerns the navigation of ships; but which, for that very reason, ought to be held the more conclusive; since it seems to be conceded that the rule for which we contend is less stringent in regard to personal, than fixed property.

This was a case of collision of vessels. The defendant's vessel, while under the control of a pilot, ran into, and injured the ship of the plaintiff, through the negligence of the pilot. Chief Justice Parker said :

" We think that the owners of a vessel, which by collision with another vessel, has caused damage through the fault or negligence of any one on board, is answerable to the injured party in respect of their property, notwithstanding there may be a pilot on board, who has the entire control and management of the vessel. It is more convenient that such owner should seek his remedy against the pilot whom he has for this service, than that the

injured party should; and it is more conformable to the general spirit of our laws."

We conceive this to be a very pointed authority. The pilot is assuredly not a servant, in the strict, or even the ordinary sense of the term. He is as much a contractor, working by the job, as a builder who undertakes by contract to erect a house of certain dimensions, for a certain sum. The decision is really based upon broader principles than those controlling the relations of master and servant—upon principles of public policy and convenience, and upon the right of selection which belongs to the owners. As to this right of selection applied to pilots, we suppose, perhaps erroneously, that it extends to the right to elect whether the ship shall have any pilot or not; for pilots are, we believe, usually organized and controlled by statutory regulations which leave ship-owners no option as to the selection of any particular pilot, provided they have any at all.

The case of Bailey *v.* The Mayor of the City of New York, 3 Hill, 532, was a case very strongly resembling the present in some of the leading circumstances of its history. The Legislature of the State passed a certain act for the purpose of supplying the city of New York with pure water, in pursuance of which, a board of commissioners was appointed to carry the act into effect. "The commissioners proceeded to enter into a contract with Crandall and Van Zandt, whereby the latter agreed to build the dam in question according to certain plans and specifications thereto annexed; in pursuance of which contract the dam was constructed. Also, a bond was given by the said contractors, with sureties, to the defendants, conditioned that the contractors should well and faithfully perform their said contract."

The dam constructed in pursuance of this arrangement, having, by reason of its defective construction, broken away in a great and extraordinary flood, and destroyed a large amount of plaintiff's property; this action was brought against the city.

It was held by the Supreme Court, *nemine dissentiente*, that the commissioners appointed by the Legislature, were *quoad hoc* servants of the city; and that, therefore, the city was responsible for their conduct, in having contracted with unskillful men to perform the work.

Upon error, to the Court for the Correction of Errors, the judgment was affirmed. See Bailey *v.* The Mayor of the city of New York, 2 Denio, 434 to 460.

We shall next call the attention of this Court, to the case of Lesher *v.* The Wabash Steam Navigation Co., decided by the Supreme Court of Illinois, at the November Term, A. D. 1852.

In Judge Story's work upon Agency, he assents to the modern modifications of the rule *respondeat superior*, which makes liability for injuries caused by another, depend upon the right or

power of selection in the person sought to be charged. He does not refer to the case of a nuisance, erected upon a man's land by another, with the owner's consent. Indeed, a question of that character could scarcely, with propriety, come within the scope of a treatise on the law of agency.

But it is a noticeable fact, that he refers to the case of Bush *v.* Steinman, as authority, (and, of course, with some degree of approbation, at least,) in support of the proposition that "a principal is liable, not only for the misfeasance of his immediate agent, but also of one with whom the agent had contracted to do the work." Story on Agency, § 454.

Now, are we to be told, with these facts appearing of record, and staring us in the face, that Laird and Chambers are not liable? That they are purged of their liability by their contract with Moore and Foss? If this be so, then a man engaging in a dangerous enterprise, has only to engage some bankrupt contractor and entrust the work to him. If it succeeds, well and good; if it fails, he is none the worse off. We repeat, that this injury owes its origin to the will of the defendants Laird and Chambers; and to the authors of the evil, we ought, in law and conscience, to look for reparation. Suppose that Moore and Foss had been sued by a third person in an action where the right to erect the dam came in question; would they not have invoked the aid of Laird and Chambers? And if they had been mulcted in damages could they not have called upon Laird and Chambers to refund such damages to them?

A few words as to this doctrine of right of selection.

All authorities agree in holding, that where the right to select the person who actually performs the labor exists in the defendant, he is liable for injuries arising from such work. This, we suppose, is the only real and tangible modification of the rule, in Bush *v.* Steinman, made by the late decisions. In all of the cases where this modification of the rule is applied, it will be seen that the injuries complained of, proceeded from the acts of sub-contractors, or their servants, and not from the acts of the immediate contractors. To illustrate the rule, and, at the same time, the exception, suppose that A, the servant of B, engages C to do B's work. C is then the servant of B. But suppose that A, instead of being strictly a servant of B, takes the job from B as a contractor, with an agreement to furnish materials and do the work in his own way; and then engages C to do the work. B is not a servant to B, because as to him B had no right of selection or choice.

Now, if in such a case, the injury be done by C, the sub-agent or sub-contractor, B should not be held liable, under some of the late authorities, unless the work comes within the other exception of being a nuisance on B's land.

But suppose the injury, instead of being committed by C, the

32

sub-agent, was the direct result of the act of A, the contractor; B would then be liable, because as to him, the right of selection was vested in B.

This conclusion is founded upon the obvious reason, that as between the employer and the contractor, the right of selection exists in an equal degree, and with as great force as between master and servant. No man is compelled to employ another as contractor, any more than he is compelled to employ him as a servant. The man who contracts with a builder to erect a house, is in law and in fact, no more limited in his choice, than when he takes upon himself the superintendence of the building, and proceeds to work with the hired servants. The master who selects an incompetent or careless servant is liable for the injudicious exercise of his right. Why, then, should not the employer, who contracts with an unskillful contractor, be answerable for his improvident choice? Nay, we think that the weight of reason is in favor of holding the employer liable in such cases, rather than the master. For he who engages a contractor, voluntarily divests himself of the right to control and manage the projected work. It is his special duty to see that the person upon whom he confers powers so extensive, should be competent to discharge them in a skillful manner. It ought to be, and is, a maxim of law as well as of ethics, that the more extensive and important the duties to be performed, the more close and thorough should be the scrutiny into the qualifications of the person selected to perform them.

In what manner this fact is supposed to affect the main question of Laird and Chambers' liability, we are at a loss to conjecture. The question is not, who owns the land, but who controls it? Because the liability does not depend on the ownership, but on the control which the defendant has of the property.

Judging from the exception tendered by the appellants in the Court below, we should say they entertained the opinion that no one could erect an actionable nuisance unless he had an estate of inheritance in the land.

Hitherto, in our folly, we have been accustomed to imagine that the absence of right in an individual, enhanced rather than diminished his legal liability. But we now perceive our mistake, and for the first time ascertain the logical correctness of what we have before esteemed a paradox; that a man's liability decreases in exact proportion as his right diminishes

A party is entitled to recover damages for an injury to himself or property, in each of the following cases:

1. "Where the negligence of the defendant, in a suit upon such ground of action, is the proximate cause of the injury, but that of the plaintiff only remote, consisting of some act or

omission, not occurring at the time of the injury, the action is maintainable."

2. "Where a party has in his custody or control, dangerous instruments or means of injury, and negligently places or leaves them in a situation unsafe to others, and another person, although at the time even in the commission of a trespass, or otherwise somewhat in the wrong, sustains an injury thereby, he may be entitled to redress."

3. "When the plaintiff, in the ordinary exercise of his own rights, allows his property to be in an exposed and hazardous position, and it becomes injured by the neglect of ordinary care on the part of the defendant, he is entitled to reparation; on the ground that although in allowing his property to be exposed to danger, he took upon himself the risk of loss by mere accident, he did not thereby discharge the defendant from his duty of observing ordinary care, or in other words, voluntarily incurring the risk of injury by the defendant's negligence."

These three very obvious propositions are extracted from the notes to Hare & Wallace's edition of Smith's Leading Cases, where nearly all the law on the subject is collected and arranged. Vol. 1, Hare & Wallace's edition of Smith's Leading Cases; notes to Ashby *v.* White, 365, edition of 1855.

In addition, we shall cite the following cases; Bird *v.* Holbrook, 4 Bingham, 628; Platte *v.* Wilkes, 3 B. and A., 308; Walters *v.* Pfeil, 1 Moody & Malkin, 362; Davies *v.* Mann, 10 Mees. & Wel., 546; Lynch *v.* Murden, 1 Adolph. & Ellis, N. S. 29; Smith *v.* Dolsen, 3 Man. & Granger, 59; Bark Delaware *v.* The Osprey, 2 Wallace, Jr., 275; Kerwhaker *v.* Cleveland R. R., 3d American Law Reg., 342; Mayor of Colchester *v.* Brooks, 7 Adolph. & Ellis, N. S., 333 to 386; Cook *v.* The Champlain Nav. Co., 1 Denio, 92 to 104.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The only question necessary to consider for the determination of the appeal in this case, arises upon the refusal of the Court below to give certain instructions as to the liability of the defendants Laird and Chambers.

The action is brought to recover damages sustained by the plaintiffs, in consequence of the breaking of a dam or embankment constructed across Deer Creek, in Nevada county, by the defendants Moore and Foss, under a contract with the defendants Laird and Chambers. It appears from the evidence introduced on the trial, that in June, 1856, the defendants, Moore and Foss, entered into a contract with Laird and Chambers, by which, in consideration of the payment by the latter of certain moneys in the progress of the work, and the balance upon its completion, Moore and Foss bound themselves to construct, at a designated

point on the Creek, a dam or embankment, of certain specified dimensions, with good and substantial materials, in a workman-like manner, and capable of resisting all floods and freshets of the stream, for a period of two years, and to deliver it comple-ted by a given time.   The construction was commenced in pur-suance of the contract, in July or August, 1856, and with the exception of an interval of some weeks in September and Octo-ber, was progressed in, until February 14th, 1857, when, being still incomplete, it was broken by a sudden freshet, and a large volume of water detained by the embankment being thus loosened, rushed down the channel of the stream, carrying away and destroying, in its course, the store of the plaintiffs, with their stock of merchandise.

The defendants Moore and Foss are architects, and were at the time of the contract reputed to be experienced and skillful in their profession; and from the commencement of the work up to and including the time of the breakage, they had exclusive control over its construction.   The defendants Laird and Cham-bers exercised no superintendence, gave no directions, furnished no materials, employed no hands, and although the time within which, by the contract, the work was to be completed had passed, they had never signified any willingness to waive the objection as to the time, and accept the same when completed.

On the conclusion of the testimony, the defendants' counsel requested the Court to give, among others, two instructions, which amounted in substance to this : that if the jury believed in the construction of the dam under the contract, Moore and Foss acted under an independent employment, had the sole con-trol of the work, and the manner of its building, the employ-ment and management of the hands engaged thereon; and that Laird and Chambers had not received the dam from such con-tractors before it broke, and that the injury complained of, oc-curred through the negligence and unskillfulness of Moore and Foss, and their employees, the jury would find for the defend-ants Laird and Chambers.   The Court refused the instructions, and, at the request of the plaintiffs, charged the jury, "That if the defendants Laird and Chambers, employed the defendants Moore and Foss, to construct the dam referred to in the plead-ings and evidence in this cause, at the point where the same was erected, and such dam gave way and broke, by reason of its un-skillful construction, and an injury resulted therefrom to plain-tiffs, then that the defendants Laird and Chambers, are liable in this action."

The Court below thus placed the liability of Laird and Cham-bers, for the injuries sustained, solely upon the fact that they contracted for the construction of the work, and held that this liability was not affected by the fact that they exercised no con-trol or supervision over the work during its progress, or that

Moore and Foss were independent contractors, to whose skill and judgment the construction of the work was entirely entrusted.

To determine the propriety of the instructions given and refused, it will be necessary to consider the principles upon which responsibility could attach to Laird and Chambers, and their application to the facts of this case. If liability exists on their part, it must arise either from their relation to the parties engaged in the erection of the structure, or from the character of the structure itself, independent of its construction.

The relation between parties to which responsibility attaches to one, for the acts or negligence of the other, must be that of superior and subordinate, or, as it is generally expressed, of master and servant, in which the latter is subject to the control of the former. The responsibility is placed where the power exists. Having power to control, the superior or master is bound to exercise it to the prevention of injuries to third parties, or he will be held liable. The responsibility attaches to the superior, upon the principle *qui facit per alium facit per se.* To determine the responsibility, therefore, it is necessary to ascertain whether the relation existing between the party charged and the party actually committing the injury, be in fact that of superior and subordinate, or master and servant. "Unless the relation of master and servant exist between them," said Coleridge, J., in Milligan *v.* Wedge, "the act of one creates no liability in the other." 12 Adol. & Ellis, 737. "The rule of *respondeat superior,*" said the Court of Appeals of New York, in Blake *v.* Ferris, "as its terms imply, belongs to the relation of superior and subordinate, and is applicable to that relation, wherever it exists, whether between principal and agent, or master and servant, and to the subjects to which that relation extends, and is co-extensive with it, and ceases when the relation itself ceases to exist." 1 Selden, 48.

By applying the test thus laid down to the relation existing between Laird and Chambers on the one hand, and Moore and Foss on the other, the question of liability will be easily solved. The relation between them wants one of the most essential features of the relation between master and servant. Something more than the mere right of selection, on the part of the principal, is essential to that relation. That right must be accompanied with the power of subsequent control, in the execution of the work contracted for. In the present case, that power was wanting, and, of course, the relation to which it was essential did not exist. Laird and Chambers conceived the project of constructing a dam across a mountain stream, and applied to architects by profession, of reputed skill and experience, to carry the project into execution. A dam capable of effecting a certain result was contracted for; the mode of construction, the se-

lection of materials, and the employment of hands, were all entrusted to contractors, who, from their profession, were supposed to be much better qualified to judge of such matters than Laird and Chambers themselves. The relation between the parties was that of independent contractors; Laird and Chambers, on the one hand, contracting for a dam of certain dimensions and strength;—and Moore and Foss, on the other hand, contracting to construct and deliver such dam within a specified time, for a stipulated sum. To this relation the doctrine of *respondeat superior* does not apply, as will be perceived by an examination of the recent decisions of the English and American Courts. In Rapson *v.* Cubitt, 9 Exchequer R., 710, the defendant, a builder, was employed by the committee of a club, to make certain alterations at the club-house, including the preparation and fixing of gas-fittings, and he made a contract with one Bland, a gas-fitter, to perform this part of the work, in the performance of which, through the negligence of Bland, the gas exploded, and injured the plaintiff; and the Court held that the defendant was not liable. Lord Abinger, C. B., said: " The injury was occasioned by the negligence of Bland, who did not stand in the relation of servant to the defendant, but was merely a *sub-contractor* with him; and to him the plaintiff must look for redress." And Parke, B., said : " I am of the same opinion. The plaintiff has his remedy against Bland, whose negligence was the cause of the injury; if he attempts to go further, and to fix the defendant, it can only be on the ground of Bland's being the servant of the defendant; but then the obvious answer is, that Bland was only a *sub-contractor*, to do certain of the works, and that the relation of servant and master did not subsist between him and the defendant." In Burgess *v.* Gray, 1 Manning, Granger & Scott, 578, the defendant was proprietor of premises adjoining the highway, and employed one Palmer to construct a drain to communicate with the common sewer. Palmer employed workmen, who in the performance of the work placed a heap of gravel on the highway, in consequence of which the plaintiff in driving along the road was thrown from his cart, and sustained the injury for which the suit was brought. It was in evidence that Palmer had the entire control and management of the work, and employed workmen whom he paid, and charged the defendant with the amounts paid ; that the defendant had applied to the commissioners for leave to break into the sewer, and that the dangerous condition of the heap was pointed out to him by a policeman before the accident occurred, when he promised to remove it. The plaintiff obtained a verdict, and the defendant a rule *nisi* to enter a nonsuit, in deciding which, Tindal, C. J., said : " If, indeed, this had been the simple case of a contract entered into between Gray and Palmer, that the latter should make the drain and remove the earth and rubbish, and there had

been no personal superintendence or interference on the part of the former, I should have said it fell within the principle contended for by my brother Byles, and that the damage should be made good by the contractor, and not by the individual for whom the work was done," but on the ground that the evidence showed that the soil had been placed on the road with the defendant's consent, if not by his express direction, he was of opinion that the verdict should stand; and Coltman, J., said: "I think there was evidence enough to satisfy the jury that the entire control of the work had not been abandoned to Palmer," and the rule was discharged.  In Helbitt v. The London and North-Western Railway Company, (4 Exchequer, 254) workmen employed by the defendants in constructing a bridge over a public highway caused the death of a person passing beneath, by negligently allowing a stone to fall upon him, and it was held that the company were not liable in an action by the administratrix of the deceased.  In rendering the judgment of the Court, Baron Rolfe said: "The liability of any one, other than the party actually guilty of any wrongful act, proceeds on the maxim, '*qui facit per alium facit per se.*'  The party employing has the selection of the party employed, and it is reasonable, that he who has made choice of an unskillful or careless person to execute his orders, should be responsible for any injury resulting from the want of skill, or want of care of the person employed; but neither the principle of the rule, nor the rule itself, can apply to a case where the party sought to be charged does not stand in the character of employer to the party by whose negligent act the injury has been occasioned."

In Knight v. Fox, 5 Exchequer, 721, a railway company had contracted with A to construct a portion of their line.  A contracted with B to erect a bridge on the line, B contracted with one Cockrane to erect, for a specified sum, a scaffold which had become necessary in the construction of the bridge, and to furnish the requisite materials, lamps, and other lights.  In the erection of the scaffold, a portion was improperly projected upon the foot-path, owing to which, and the want of sufficient light. D fell over it at night, and was injured; and it was held that an action could not be maintained by D against B for the injury thus occasioned, and the plaintiff was nonsuited.  On the rule to show cause why the nonsuit should not be set aside, Baron Parke held, the rule should be discharged, and said the case was "precisely the same as it would have been, if the defendants had entered into a contract with some third party to perform that work."  Alderson, B, was of the same opinion, and said, "that when that negligent act was occasioned by Cockrane, he was acting in the character of a *sub-contractor*, and that he did the work on his own individual account.  The defendants took no part in the matter.  The plaintiff's remedy was against Cock-

rane," and so the rule was discharged. In Peachy *v.* Rowland, (16 Eng. Law and Equity, 443,) the defendants contracted with A, to fill in the earth over a drain which was constructed for them across a portion of the highway, from their house to the common sewer. A having filled the drain, left the earth so heaped up above the level of the highway, as to constitute a public nuisance, in consequence of which the plaintiff, in driving along the road, sustained personal injury, for which he brought his action. A few days previous to the accident, and before the completion of the work, one of the defendants had seen the earth heaped up on a portion of the drain, but there was no evidence that either of the defendants had interfered with, or exercised any control over the work, and the Court held that there was no evidence to go to the jury, of the defendants' liability. The principle to be extracted from this decision is, that if a party be employed to do a lawful act, and in doing it, he commit a public nuisance, his employer is not liable.

The decisions of the New York Courts are to the same effect, and express, with equal clearness, the distinction between the liability of an employer, when the relation between him and the employed is that of master and servant, and when it is that of independent contractors. In Blake *v.* Ferris, (1 Selden,) the defendants had obtained permission from the authorities of the city of New York to construct a sewer, at their own expense, in a street of the city. One Butler was appointed by the street commissioner, an inspector of the work, and, as such, had charge of the sewer. He contracted with one Gibbons to furnish all the materials, and build the sewer in question according to the specifications of the street commissioner, and to provide proper guards and lights, at the excavation of the drain, for the prevention of accidents. In consequence of the negligent manner in which the sewer, while yet unfinished, was left open and unguarded in the night, the plaintiff's horses and carriage were driven into it, and for the injuries thereby occasioned, the suit was brought. Upon the close of the case, the defendant requested the Court to instruct the jury, in substance, that if the contractor, who was engaged in constructing the sewer when the accident happened, was exercising an independent employment, and the defendants did not interfere with the work, they were not liable; but the Court refused the instruction, and the plaintiff had judgment, and the case went to the Court of Appeals, where the judgment was reversed. In its opinion the Court said:

" When a man is employed in doing a job, or piece of work, with his own means, and his own men, and employs others to help him, or to execute the work for him, and under his control, he is the superior, who is responsible for their conduct, no matter whom he is doing the work for. To attempt to make the pri-

mary principal, or employer, responsible in such cases, would be an attempt to push the doctrine of *respondeat superior* beyond the reason on which it is founded."

In Pack *v.* The Mayor, etc., of New York, (4 Selden, 222,) the defendants had entered into a contract with one Foster to grade Bloomingdale road, and furnish materials for the same, in accordance with certain specifications. Foster made a contract with one Riley to do all the blasting of rocks required. In blasting, several fragments of rock were thrown into the house of the plaintiff, producing injury to his family and property; and it was held by the Court that the contractor Foster was not the agent or servant of the corporation, and that the city was not, in consequence, liable. Jewett, J., in delivering the opinion of the Court, said:

" The doctrine is, that a person who undertakes the erection of a building, or other work for his own benefit, is not responsible for injuries to third persons, occasioned by the negligence of a person, or his servant, who is actually engaged in executing the whole work under an *independent employment, or a general contract for that purpose.* Foster was such a contractor, actually engaged in performing his contract for the entire job, for whose negligence, or that of his servants, the defendants are not liable."

In Kelly *v.* The Mayor of New York, (1 Kernan, 432,) it was held that the corporation, which had contracted with a person to grade a street, was not liable for damages occasioned by the negligence of the workmen employed by the contractor in performing the work. In that case, whilst the plaintiff was riding in the street, his horse was injured by the careless blasting of one of the workmen. The cases of Blake *v.* Ferris, and Pack *v.* The Mayor, etc., of New York, were cited as authority, and in referring to a clause in the contract that the work was to be done under the direction, and to the satisfaction, of certain officers of the corporation, the Court said:

" The, clause in question clearly gave to the corporation no power to control the contractor in the choice of his servants. That he might make his own selection of workmen, will not be denied. This right of selection lies at the foundation of the responsibility of a master, or principal, for the acts of his servant, or agent. * * * As a general rule, certainly no one can be held responsible as principal who has not the right to choose the agent from whose act the injury follows."

The doctrine laid down in this opinion as to the liability of Laird and Chambers is abundantly sustained by the authorities above cited. Their liability, so far as the injury complained of arose from the negligent and unskillful erection of the dam, depends upon the question whether the relation between them and Moore and Foss was such as to authorize a supervision and control in the execution of the work. If it authorized such super-

vision and control; if, in other words, it was that of master and servant, they are liable. If, on the other hand, Moore and Foss, under the contract, were engaged in an independent employment in the construction of a work which was entrusted entirely to their skill, and over which no supervision and control were exercised by Laird and Chambers, the relation of master and servant did not exist, and the liability belonging to that relation, did not attach. The instructions asked by the defendants' counsel were proper, and should have been given, unless a liability existed from the nature of the structure itself, independent of its manner of construction.

If the injury complained of arose, not from the manner in which the embankment or dam was constructed, but from the fact that it was constructed at all; that is, if it was a structure amounting to a nuisance, liability therefor would attach equally to Laird and Chambers, and the contractors, Moore and Foss. The authorities limit the liability to cases where structures amounting to nuisances are erected on or near and in respect to fixed property of the owner, and place the liability on the ground that every man is bound to so use and manage his own property as not to injure others. When the structure is erected by the *permission* of the owner, there is reason in limiting the liability to cases where the nuisance is placed on, or near, and in respect to his own property; but, where it is erected by his express direction, we can perceive no reason for the limitation. It is not the structure itself, but its character as a nuisance, that causes the injury and creates the liability.

In Bush v. Steinman, 1 Bosanquet & Puller, 402, the defendant had purchased a house by the road-side, and contracted with a surveyor to repair it for a stipulated sum; a carpenter having a contract under the surveyor to do the whole business, employed a bricklayer under him, who contracted for a quantity of lime with a lime-burner, by whose servant the lime in question was placed in the road. The plaintiff and his wife, riding in a chaise, were overturned and injured by the heap of lime, and they brought their action against the defendant, and took a verdict, with liberty to the defendant to move for a nonsuit. In the decision of the motion, Chief Justice Eyre concurred with his associates in sustaining the verdict, but at the same time said, "I am ready to confess, that I find great difficulty in stating, with accuracy, the grounds on which it is to be supported. The relation between master and servant, as commonly exemplified in actions brought against the master, is not sufficient; and the general proposition, that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do, seems to be *too large and loose.*   *   *   *
Where a civil injury of the kind now complained of has been sustained, the remedy ought to be obvious, and the person in-

jured should have only to discover the owner of the house which was the occasion of the mischief; not to be compelled to enter into the concerns between that owner and other persons, the inconvenience of which, would be more heavily felt than any which can arise from circuity of action.  Upon the whole case, there-fore, though I still feel difficulty in stating the precise principle on which the action is founded, I am satisfied with the opinion of my brothers."

Heath, J., founded his opinion on the fact that all the sub-contracting parties were in the employ of the defendant.  "It has been," he said, "strongly urged, that the defendant is not liable, because his liability can be founded in nothing but the mere relation of master and servant.  But no authority has been cited to support that proposition.  Whatever may be the doc-trine of the civil law, it is perfectly clear that our law carries such liability much further."

Brooke, J., placed his concurrence with Mr. Justice Heath on the ground, that "he who has work going on for his benefit and on his own premises, must be answerable for the acts of those he employs."

In Laugher v. Painter, 5 Barn. & Cres., 579, the defendant, who was owner of a carriage, hired a pair of horses to draw it, for a day, from a stable-keeper, who provided the driver, through whose negligent driving an injury was done to the horse of the plaintiff.  The Court were divided as to the defendant's liability Littledale, J., in giving his opinion, commented upon the cases of Bush v. Steinman, and Sly v. Edgley, (6 Esp., in which last case Lord Ellenborough followed, at nisi prius, the authority of Bush v. Steinman) and drew a distinction between the liability of a party for injuries resulting from the use of hired property, and injuries arising from the use and occupation of real estate.  "And the rule of law may be," he said, "that in all cases where a man is in possession of fixed property he must take care that his property is so used and managed that other persons are not injured, and that whether his property be managed by his own immediate servants, or contractors, or their servants.  The in-juries done upon land, or buildings, are in the nature of nuisances, for which the occupier ought to be chargeable when occasioned by any acts of persons whom he brings upon the premises.  The use of the premises is confined by the law to himself, and he should take care not to bring persons there who do any mischief to others.  *  *  *  But admitting these cases, the same principle does not apply to personal movable chattels, or to the permanent use and enjoyment of land or houses.  *  *  *  The use of per-sonal chattels is merely a temporary thing, the enjoyment of which is, in many cases, trusted to the care and direction of per-sons exercising public employment, and the mere possession of that, when the care and direction of it is entrusted to such per-

sons who exercise public employment, and in virtue of that, fur-
nish and provide the means of using it, is not sufficient to ren-
der the owner liable." And Chief Justice Abbot, in the same
case, said : "Whatever is done for the working of my mine or
the repair or my house, by persons mediately or immediately
employed by me, may be considered as done by me. I have the
*control* and *management* 'of all that belongs to my land or my
house, and it is my fault if I do not so exercise my authority as
to prevent injury to another."

In Quarman *v.* Bennett, decided in 1840, (6 Exchequer, 499,)
Baron Parke, in delivering the opinion of the Court, drew the
same distinction ; but in Reedie *v.* The London North-western
Railway Company, decided in 1840, (4 Welsb., Hurl. & Gold.,
254,) the Court of Exchequer held there was no such distinc-
tion, except in cases where the acts complained of amount to a
nuisance. In this case, the counsel for the plaintiff argued that
there was a recognized distinction between injuries arising from
the careless or unskillful management of an animal, or other per-
sonal chattel, and an injury resulting from the negligent man-
agement of fixed and real property ; but Baron Rolfe, in deliver-
ing the opinion of the Court, after alluding to the distinction
noticed by Littendale, J., in Laugher *v.* Painter, said : "But on
full consideration, we have come to the conclusion that there is
no such distinction, unless, perhaps, in cases when the act com-
plained of is such as to amount to a nuisance ;' and, in fact, that,
according to the modern decisions, Bush *v.* Steinman must be
taken not to be the law, or, at all events, that it cannot be sup-
ported on the ground on which the judgment of the Court pro-
ceeded. * * * It remains only to be observed that, in none
of the modern cases has the alleged distinction between real and
personal property been admitted. In Milligan *v.* Wedge, Lord
Denman expresses doubt as to the existence of such a distinc-
tion, in any case ; and in the more recent case of Allen *v.* Hay-
wood, the judgment of the Court proceeded expressly on the
ground that the *contractor*, in a case like the present, is the only
party responsible."

The doctrine laid down in this last case appears to us to be
founded in good sense ; and it follows from it that the distinc-
tion, as to the liability of a party, when he engages a contractor
to erect structures on his own premises, and when he engages
such contractor to erect them on the premises of another, does
not rest on any just principle. If the enterprise undertaken be
a lawful one, and be entrusted to competent and skillful archi-
tects, there is no just reason why liability should attach to the
projector, for injuries occurring in its progress, any more if such
enterprise be executed on his own land, than if executed else-
where. If a man, wishing to build a house for his own use, upon
his own premises, lets it out by contract to an architect, who is

to provide all materials, and deliver it completed; upon no just principle should his liability be greater than if he undertook the building of a similar house upon his neighbor's property, and let it out by contract in the same way.   If the structure amount to a nuisance—if the injury complained of arises, not from its negligent or unskillful construction, but from the fact that it is constructed at all—then liability would attach, whether the erection be made under his own supervision and control, or let out by contract to others.   To illustrate this position—if the owner of land erect a dam, or permit a dam to be erected, across a stream running through his property, by which his neighbor's land is flooded, he is liable for damages, for the injury results, not from the manner in which the dam is erected, but from the fact that it is erected all.   He has used, or permitted his property to be used, to the injury of others, and must be responsible. But if no injury follows from the dam itself, and its construction is let out by contract, there is no reason why the owner should be responsible for injuries arising from the negligence or unskillfulness of the contractors, during the progress of the work, from the fact that it is a structure upon his own land, if such liability would not attach to him, if the structure were on the land of another.

We have examined the authorities in the Massachusetts Reports, cited by the learned counsel of plaintiff in his very able brief, and also the case of Bailey *v.* The Mayor of New York, in 3 Hill, and 2 Denio.   The Massachusetts cases follow the older English decisions, and in Lowell *v.* Boston & Lowell Rail-Road Corporation, (23 Pickney, 24,) the Court cite Bush *v.* Steinman, with approbation and say, " this decison is fully supported by the authorities cited, and well established principles."   The question involved at the case at bar, does not appear to have been discussed in Massachusetts in the light of recent English decisions. In the case in 3 Hill, and 2 Denio, the corporation of New York was held responsible for injuries occasioned by the negligent and unskillful construction of a dam on the Croton River, which was a part of the works built for supplying the city with pure water.   In that case it would appear that the dam had been completed and accepted by the corporation.   By its acceptance and subsequent use, the corporation assumed the responsibility of the work, and virtually guarantied its strength and capability to protect against injuries.   To third parties it then became liable, and although the Chancellor in his opinion does not mention in terms the acceptance of the dam—yet this fact must have had a controlling influence on his judgment, for he places the liability of the city expressly on the ground that *the dam* was the *property* of the corporation and that the corporation was bound to see that it was not used by any one so as to become noxious to the occupiers of property on the river below, and concluded by

by saying "and upon that ground, though I confess with some hesitation, I shall assent to the affirmance of the judgment of the Court below." In Blake v. Ferris, already cited, which was decided nearly six years after the case of Bailey v. The Mayor etc., of New York, the Court, in reference to Bush v. Steinman, observes that it was followed by Lord Ellenborough at *nisi prius* in the case of Sely v. Edgebery, (6 Esp. Rep., 6,) but was believed never to have received the sanction of an English Court. In Laugher v. Painter, its authority in reference to the case before the Court was denied and the correctness of the principle on which it was founded doubted by Littendale, J., and in Quarman v. Burnett, and Rupson v. Cabitt, it was held inapplicable to those cases, and in Reedie v. The North-Western Railway Company, it was held not to be law, or at all events that it could not be supported on the ground in which the judgement proceeded, ·and the Court concludes its opinion by stating that upon examination it appeared that the main proposition of that case was not law in England or in New York.

The recent decisions of England and of New York, appeared to us to be sustained by sound reasoning, and to place the liabilities of parties upon just principles, and we only advance one step further in the same direction, following the same reasoning, in holding, as we do, that the liability of Laird and Chambers is not affected by the question, whether they were the owners or not, of the land, where the dam in question was located.

For injuries occurring in the progress of the work before its completion and acceptance, the contractors alone were responsible to third parties, the defective construction which caused the injury not being inherent in the original plan contracted for. If the mode and manner which constituted the defect by which the injuries complained of were occasioned, had been inherent in the plan, and this plan had been devised by Laird and Chambers, which the contractors were simply engaged to carry out, then liability would attach to Laird and Chambers, for injuries occurring in its progress, as well as afterwards. But this is not pretended. If the injuries complained of had been occasioned after the completion of the dam by the contractors, and its acceptance by Laird and Chambers, there can be no doubt of the liability of the latter. Parties for whom work contracted for is undertaken, must see to it before acceptance, that the work, as to strength and durability, and all other particulars necessary to the safety of the property and persons of third parties, is subjected to proper tests, and that it is sufficient. By acceptance and subsequent use, the owners assume to the world the responsibility of its sufficiency, and to third parties, the liability of the contractors has ceased, and their own commenced. In the present case, the damages are, in fact, claimed for the negligence and unskillfulness of the work of the contractors before

its completion and acceptance, and it is sought to fasten a liability for such damages upon Laird and Chambers, from the fact that it was in their mind that the undertaking originated, and it was their volition which set that undertaking into execution. If these reasons are sufficient to charge them, then upon the same principle, no enterprise requiring for its execution the skill, learning, and knowledge of professional men, could be undertaken, without risks on the part of the original projectors, which no prudent man would take.

It follows that, as the case stands before this Court upon the record, the liability of Laird and Chambers must depend upon the character of the relation between them and Moore and Foss, and the refusal of the instructions based upon that relation, was error, for which a new trial must be had.

Judgment reversed, and cause remanded.