The Chicago and Northwestern Railway Company

v.

Patrick Delaney.

*Opinion filed November 8, 1897—Rehearing denied December 10, 1897.*

1. APPEALS AND ERRORS—*when alleged error in refusing peremptory instruction cannot be considered.* Alleged error of the trial court in refusing an instruction directing a verdict cannot be considered on appeal, where the instruction was asked as one of a series, following others already given at the request of the same party, which submitted the case to the jury on the facts.

2. NEGLIGENCE—*whether railroad company had constructive notice of obstruction on track is for the jury.* Whether an obstruction, consisting of a piece of draw-bar broken in switching some four or five hours before the happening of an injury alleged to have been caused by it, had remained upon the tracks in a railroad yard sufficiently long to charge the company with notice is for the jury.

*Chicago & Northwestern Ry. Co. v. Delaney,* 68 Ill. App. 307, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. DORRANCE DIBELL, Judge, presiding.

WILLIAM BARGE, and C. LEROY BROWN, for appellant.

JAMES W. DUNCAN, (LINCOLN & STEAD, and DUNCAN & HASKINS, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellee recovered a judgment in the LaSalle circuit court for $12,500 against appellant, in an action on the case for a personal injury received while in the performance of his duties as night yard-master in appellant's switch-yards at Spring Valley. Appellee had charge of the night crew in the employ of appellant, but, in addition to his duties in directing what should be done, also assisted in switching and coupling cars. He had been in the service of the company for a number of years, and upon the night in question entered upon his work at the

yards at about six o'clock, and received the injury complained of at about 8:30 o'clock of the same evening. One Draper was the yard-master, and had the supervision of the yards, hired and discharged members of the different crews, kept their time, and had general control over them in their work. Draper worked with the day crew, the appellee with the night crew. It seems that in switching cars from one track to another on the day of the accident, by Draper and his helpers, certain cars were thrown together with such force that the draw-bar of one of them, either because of a defect in such draw-bar, or of the force used, or both, was broken off and fell upon and remained on the track until appellee was injured in the night, as before stated. This piece of broken draw-bar was of triangular shape, about eighteen inches long, ten inches wide and six or eight inches thick, and was such an obstruction upon the track that the switch engine operated by appellee and his helpers could not safely pass over the same. Appellee had no knowledge of this obstruction to the track, and while in the discharge of his duties on the night in question, backed his engine, with the assistance of one of his helpers, over the track at the place of the obstruction, when the pilot struck the piece of broken draw-bar and the foot-board upon which appellee was riding was split and turned under, and appellee was thrown forward and dragged, and his foot and ankle were so badly injured that it became necessary to amputate his leg just below the knee. The evidence tended to show that appellant had examined the track in question, and had it cleared of all scrap-iron and rubbish on the morning before the injury, and that the broken draw-bar fell upon the track afterward, some time between two and four o'clock in the afternoon of the same day. The Appellate Court, after requiring a *remittitur* of $6500, affirmed the judgment for the balance.

No instructions were given to the jury on behalf of the plaintiff, but the court gave on behalf of the defendant

fifteen instructions as asked, four others as modified by the court, and refused six. Among the instructions asked by the defendant was one which would have directed the jury to find the defendant not guilty, and much of the argument in this court is directed to the alleged error in refusing this instruction. This instruction was numbered 24 of the series asked by the defendant, and was submitted with others which directed the jury to pass upon the questions of fact which that instruction would have withdrawn from the jury. Following the decision in *Peirce* v. *Walters*, 164 Ill. 560, we must hold that the defendant waived its right to insist upon this instruction, even if it would have been proper under the evidence, if submitted in apt time. But it cannot properly be said, as a matter of law, that the defendant was free from negligence and observed its duty in keeping its track in a reasonably safe condition where its employee, the appellee, was required to work in the discharge of his duties. We have not undertaken to, and it cannot be expected that we should, set out all the evidence bearing upon the question, but it was clearly a question of fact for the jury, from all of the facts and circumstances before them, to find not only whether or not the injury was caused by the negligence of a fellow-servant in the same line of employment as appellee, but also whether or not the obstruction had existed for a sufficient length of time before the injury to charge the defendant with knowledge of it in time to have it removed. While it is apparent that the time was short, still, it may well have been that the exercise of reasonable care, owing to the location of the yard, the constant use made of the tracks, the dangers to switchmen engaged in such use, known to the company, and many other circumstances, might have required an examination of such tracks after they became obstructed and before the happening of the injury. It is apparent that in switching cars at night appellee could not have had as favorable opportunities to discover obstructions upon the track in time to avoid

injury as one would have in switching cars in the day time, or as the company would have in seeing that its track was unobstructed and in a reasonably safe condi- tion for use. At all events, the question was one of fact, and not of law.

What has been said on this point disposes also of the contention that the court erred in modifying the defend- ant's ninth instruction before giving it to the jury. As asked, that instruction would have told the jury, in sub- stance, that if they believed, from the evidence, that the section-men of the defendant company cleaned up the switch-yard, including the track in question, on the day the plaintiff was injured, and thereby left the track free of all obstructions, the plaintiff could not recover on the first count of the declaration. The modification was: "and that reasonable care did not require of defendant any further act of inspection down to the time plaintiff was injured." This modification was proper, and no error was committed in making it. The court had, in numerous in- structions asked by the defendant, explained to the jury the relative duties of the company and of appellee, its employee, as fixed by law in the matters in controversy, and the instruction as asked would have been clearly im- proper, as it would have taken from the jury the question whether or not, under all of the evidence, the defendant was guilty of negligence in not inspecting its track where it was obstructed, after it was examined in the morning and before the night crew entered upon its duties. In- struction No. 12, which was refused, was subject to the same objection.

The twenty-third instruction asked by the defendant would have informed the jury that the plaintiff could not recover under the second count of the declaration. This second count alleged that the defendant negligently pro- vided a switch engine (the one upon which appellee was riding at the time of the injury) of improper construction for use in its yard; that its pilot and foot-board were too

low and hung too close to the rails and road-bed to be used with reasonable safety, and alleged in appropriate language that the injury was caused by reason of such improper construction of said engine. It appears from the evidence that this engine had been in a wreck, but had been repaired about a month before appellee received the injury complained of. It had a stub-pilot on each end, —that is, a sort of short cow-catcher; also foot-boards running along the bottom edge of these pilots. The pilots were from five to five and a half inches above the top of the rail, and the foot-boards three and five-eighths inches higher. It is manifest that the court could not say to the jury, as a matter of law, that the engine was so constructed as to make it reasonably safe to employees to use in their work, or that, if improperly constructed, the defendant had notice of that fact. These were questions of fact for the jury, and the instruction was properly refused. The correct rule was announced by the court in other instructions given.

We are unable to see that appellant's rights were not carefully guarded by the court by the instructions, which seem to have been prepared with much care and skill, and no ground for reversal appears in any ruling by the court respecting them.

It is urged, also, that the declaration did not state a cause of action and is insufficient to support the judgment. We do not agree to this view. It might, perhaps, have been made more specific; but imperfections of that character were cured by the verdict, and if thought important should have been pointed out on demurrer.

Finding no substantial error in the record we must affirm the judgment of the Appellate Court.

*Judgment affirmed.*