## Johnson Chair Co. v. Joseph Agresto, Adm'r.

1. MASTER AND SERVANT—*Who is the Master.*—He is to be deemed the master, who has the supreme choice, control and direction of the servant and whose will the servant represents, not merely in the ultimate result of his work but in all its details.

2. SAME—*Responsibility of the Master.*—Unless the master has the right to discharge the servant in case of his misconduct or incapacity and employ another in his place he is not responsible to third persons for the faults of the servant.

3. SAME—*Right of Selection—The Basis of Responsibility.*—The right of selection is the basis of responsibility of the master for the acts of his servant. He can not be held responsible as master who has no right to choose the servant from whom the injury flows.

4. SAME—*Responsibility for Negligence of the Servant.*—In order to render the master responsible for the negligence of the servant he must not only have the power to select the servant but to direct the mode of executing his work and to control him in his acts so as to prevent injury to others.

5. NUISANCES—*Piling Lumber in Streets.*—It is not a nuisance to unload or temporarily pile lumber in a street adjoining a private owner for building purposes until it can be removed onto the premises.

6. WAIVER—*Of an Instruction to Find for the Defendant.*—The defendant's counsel moved the court to instruct the jury to find the defendant not guilty which the court refused to do, and as he afterward asked other instructions he was held to have waived his right to insist on the refusal of the court to give the instruction to find the defendant not guilty, as error.

Trespass on the case, for negligence in causing the death of Frank Agresto. Appeal from the Circuit Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1897. Reversed. Opinion filed February 14, 1898.

SAMUEL RICHOLSON, MATSON & DRAKE, attorneys for appellant.

ARND & ARND, attorneys for appellee; FRANKLIN B. HUSSEY, of counsel.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment in favor of appellee and against appellant in a suit brought by the former for negligently causing the death of his intestate, Frank Agresto, a boy between six and seven years of age. The suit was brought under the statute for the benefit of the next of kin of the deceased.

The facts are substantially as follows: Appellant's factory is situated between Halsted and Green and Phillips and Pratt streets, in the city of Chicago. Halsted and Green streets are north and south streets, Halsted being the street next east of Green. Phillips and Pratt streets are east and west streets. Appellant's premises extend from Halsted street to Green street, and, July 28, 1891, appellant was erecting a new building on the Halsted street side of the premises. There was, at that date, a pile of lumber on the Green street sidewalk, opposite appellant's premises, consisting of boards and planks four or five feet in height and less than twenty feet in length. Appellant had a contract with the Ott Lumber Company for lumber for the building which appellant was erecting, the lumber to be delivered to appellant by the lumber company. On the twenty-eighth day of July, 1891, the Ott Lumber Company sent one Charles Gersch with a wagon load of lumber to appellant's premises, to be there delivered. The load consisted of thirty-six pieces of timber, dimensions, twelve inches by twelve inches and fourteen feet long. Gersch approached the building with the load from the south on Green street, stopped and hitched the team about opposite the middle of appellant's building, and went into the building and saw appellant's foreman, who told him to go to the new building on Halsted street and see the carpenter boss there, which he did, leaving his team on Green street. He saw the carpenter boss, who came out and told him to turn his team around and come up right alongside of the pile of lumber on the sidewalk, and to put the lumber partly on the sidewalk and partly on the roadway—about two or three feet in the roadway. A house was being moved on Green street about that time, and the house movers were hurrying Gersch to get out of their way. There were five or six boys there, apparently watching

the housemoving, and a witness for appellee testified that he saw the driver, Gersch, take a stake out, and heard him halloo at the boys to go away, but he says that he could not tell whether the deceased was one of these boys.

Rocco Caffer, a witness in behalf of appellee, testified: "I live at 44 Phillips street, working at the barber trade. In '91 I lived in the same block with the Agresto family. It was on the 28th of July, 1891. I don't remember the time of day. He come over to my house and said, 'Let's go over to the house and play around there.' They were moving a house in front of the Johnson chair factory on Green street. We sat on the logs there. They were piled about as high as my head; about that high (indicating six feet). We went to see how the house was moving, and sat on a pile of lumber. There was another little boy there. I was in the middle and Frank on the side of me, and a man come up with a load of lumber and said to us, 'To go off from there.' As soon as we got off he turned the log down and the boy got killed under it, got under it. I think only one timber fell on him. I had my arms spread, and it just hit my little finger. I was trying to pull him out and another man came, and I run over to the house and told the old lady the boy was killed. We jumped down between the lumber pile and the wagon."

Martin Rietz, a witness for appellee, testified: "The lumber that fell on the boy fell off the wagon.  *   *   * He wanted to get off one and three went off at the same time." The question, the determination of which must be decisive of the case, is, was Gersch, the driver, in unloading the lumber, the servant of appellant or of the Ott Lumber Company? It was the duty of the Ott Lumber Company, under its contract with appellant, to deliver the lumber to appellant, and Gersch,

the driver of the wagon, was the servant of the lumber
company for that purpose. This is not contradicted,
and in view of the evidence, can not be successfully
disputed. But appellee's counsel contend, from the
mere fact that a person in appellant's employ, and who
had authority so to do, directed the driver to unload
the lumber at a particular place, that the driver, in
unloading the lumber at that place, was acting as the
servant of appellant. This proposition is, in our
opinion, utterly untenable. So long as the lumber
remained on the wagon of the Ott Lumber Company, it
was in its possession and control. It could only be
delivered to appellant by unloading it on appellant's
premises, or at some place by appellant's direction.
The act of unloading was the act of delivery, and was,
therefore, an act which the Ott Lumber Company had
contracted to perform and was bound to perform, and
was the act of that company by its servant, the driver
of the wagon. No direction whatever was given by
appellant's employee, the boss carpenter, to the driver,
as to the manner of unloading; on the contrary, the
evidence is that he merely indicated the place where
the lumber was to be unloaded, and told the driver to
help himself. Suppose A. to purchase from a coal
dealer a load of coal to be delivered by the dealer at
A.'s residence, and that A., when the coal arrives in
the dealer's wagon, driven by the dealer's driver, upon
being requested by the driver to indicate where the
coal shall be dumped, tells him to dump it on the
street next to the sidewalk, in front of his premises, in
a convenient place for its removal to A.'s cellar or coal
bin, and that the driver, in dumping it at the place
indicated, negligently causes injury to a third person,
can it be contended that the driver, in dumping the
coal, is A.'s servant, and that A. is responsible for his
negligence? This is a matter of every day occurrence,

and is, in principle, appellee's case. We apprehend that no one, under such circumstances, would contend that A. was liable. The fact is, that when lumber, coal or other bulky material is contracted to be delivered to a purchaser, it is almost a matter of necessity to inquire of the purchaser in what place it will suit his convenience to have it delivered. In our opinion, the fact that Gersch, the driver, was acting as the servant of the Ott Lumber Company in unloading the lumber, is too plain to require the citation of authorities. Nevertheless, as counsel for appellee have argued the question at great length, we refer to the following authorities:

In McCullough v. Shoneman, 105 Pa. St. 169, the facts were that Shoneman sold to one Hemingway a lot of waste paper and rags, which were in an upper story of Shoneman's building. Hemingway, by the contract, was to pack and take them away. He packed them in bags, which weighed, when packed, one hundred and seventy-five pounds, and sent two men to take them away, to whom the bags were delivered. Shoneman directed the men not to take them down by way of the stairs. There was no other way of taking them down, except to throw them out of the window. The men threw them out of the window, and one of them struck and injured the plaintiff.

PER CURIAM.—"There are three facts here about which there can be no dispute: First, the building in which the paper was stored belonged to defendant Shoneman; second, he had sold the rags to Hemingway, who was to take them away; and third, Dickson and Williams, the two men who went to Shoneman's store for that purpose, were the servants or agents of Hemingway, and were in his employ at the time the accident occurred. When, therefore, Dickson and

Williams called at Shoneman's store and were shown the paper and instructed to take it away, there was a delivery in law and in fact to Hemingway; the title passed to him, and the mere fact that it was still on Shoneman's premises, would not make him responsible for the conceded negligence of Hemingway's servants in removing it, unless he, Shoneman, in some way interfered with or directed the manner of removal. Did he do so? The whole case narrows down to this single point. It is alleged that he, either directly or through the boy that he sent up with the men, directed the bales to be thrown out of the window. Granted. But he did not direct the men to throw them upon the heads of passersby. They might have been thrown out with perfect safety, and had been upon former occasions. Had he directed the men to take them down stairs, and an accident had occurred, would he have been responsible? This is not pretended, yet there would be as much reason to hold him in the one case as in the other. Shoneman had no reason to suppose that the bales would be thrown out of the window carelessly, so as to injure any one. He had given no such direction, and he was not responsible for the manner of the removal, for the reason that the property was no longer his, and the men were not in his employ. All that Shoneman did was to point out the place of exit from his premises, and surely a property owner may do this without making himself liable for the negligence of another man's servants in the manner of the removal of the articles."

In the present case appellant (defendant below) interfered in no way with the manner of the delivery of the lumber. In a subsequent part of the opinion in the case cited, the court say: "I concede that if Shoneman had directed the manner of throwing the bales out of the window, and that if this particular

bale had been thrown in accordance with such direction, he would have been responsible. This is as far as the cases go." Ib. 173.

"He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details." 1 Shearman & Redf. on Neg. (4 Ed.), Sec. 160.

The same author, commenting on the liability of the hirer of another person's servants for the negligence of the latter, says: "The hirer can not properly be said to have control of the servants, unless he had the right to discharge them and employ others in their places, in case of their misconduct or incapacity, that being the only practicable means by which free servants can be controlled. If, therefore, the hirer has no such power, he is not responsible to any one for the faults of the servants." Ib., Sec. 162.

"The right of selection is the basis of responsibility of the master or principal for the acts of his agent. No one can be held responsible as principal who has not the right to choose the agent from whose act the injury flows." 2 Bailey's Pers. Injuries, etc., Sec. 3141.

The responsibility is placed where the power of control exists. Boswell v. Laird, 8 Cal. 469, 489; DuPratt v. Lick, 38 Ib. 691, 692.

In Robinson v. Webb, 11 Bush., 465, 475, the court say: "When we look to the principle upon which one can be made answerable for another's neglect, the only basis of responsibility is that of the relation of master and servant, the former being responsible for the acts of the latter; and to incur the responsibility, the master must not only have the power to select the servant or agent, but to direct the mode of executing the work, and to so control him in his acts as to prevent injury

to others. If this relation does not exist, no liability upon the part of one for the negligence of another can arise." See, also, Laugher v. Pointer, 5 Barn. & Cress., 547, 11 Eng. Com. Law, p. 579.

In Foster v. Wadsworth Howland Co., 168 Ill. 514, the court, evidently applying tests determinative of the existence or nonexistence of the relation of master and servant, say: "In this case appellee exercised no control over the driver of this wagon; it did not employ him, it did not pay him; it had no right to discharge him, nor had it the right to direct how or in what manner his work should be done," etc., all of which is equally applicable to appellant in the present case.

Appellee's counsel contend that the pile of lumber on the sidewalk was a nuisance; that the unloading of the wagon in the street at the time of the accident, there being no evidence of a license from the city so to do, was a nuisance, and therefore appellee is entitled to recover. These propositions will not bear discussion. It is not a nuisance to unload or temporarily pile lumber in a street adjoining the premises of a private owner, for building purposes, until it can be removed onto the premises. Callanan et al. v. Gilman, 107 N. Y. 360; 2 Beach on Pub. Corp., Sec. 1511.

To permit such an obstruction to remain permanently or for an unreasonable time, would, undoubtedly, be to create a nuisance, but in the present case there is no evidence as to the length of time the pile of lumber was on the sidewalk. But the pile of lumber did not cause the accident. The proof is conclusive that appellee's intestate was injured by the lumber thrown from the wagon, and not at all by or on account of the lumber theretofore piled on the sidewalk.

Appellant's counsel introduced no evidence, and at the conclusion of the evidence for appellee, moved the

court to instruct the jury to find the defendant not guilty, and presented to the court an instruction to that effect, which the court refused to give; but as appellant's counsel asked some eighteen other instructions, it thereby waived all right of exception to the refusal of the court to give the peremptory instruction first asked. C. & N. W. R'y Co. v. Delaney, 169 Ill. 581.

Among the instructions asked by the appellant were the following:

"8. The jury are instructed that although they may believe from the evidence that the Johnson Chair Company, or the agent thereof, directed the driver of the wagon for the John Ott Lumber Company, to unload his load of lumber at a certain place indicated by the said Johnson Chair Company, yet that fact would not constitute the said driver a servant of the Johnson Chair Company, or render said Johnson Chair Company liable for the negligence of said driver, if any occurred in unloading said lumber."

"The jury are instructed that if they believe from the evidence that the defendant purchased from the John Ott Lumber Company lumber to be delivered; that the driver who delivered and unloaded said lumber was a servant of the John Ott Lumber Company, and said Johnson Chair Company, by its agent, merely directed said driver where to deposit said lumber, such acts did not constitute the relation of master and servant between the Johnson Chair Company and said driver and employee of the John Ott Lumber Company."

The court marked the first of the above instructions "refused, if in the street as a place of deposit," and the second, "refused same as 8," indicating the opinion of the court that the unloading the lumber in the street was an element to be considered by the jury in

passing on appellee's right to recover, in which opinion we can not concur, for reasons heretofore stated.

The refusal of the above instructions was error. We are of the opinion that appellee can not recover on the facts proved, however pleaded. The judgment, therefore, will be reversed without remanding. Reversed.

Judge SEARS took no part in the decision of this case.