95    355
a196s 197

## City of Chicago v. Thomas O'Malley, by his Next Friend.

1.  VARIANCE—*Can Not be Raised for the First Time in the Appellate Court.*—The question of a variance between the declaration and the proofs can not be raised for the first time in a court of review.

2.  CITIES AND VILLAGES—*When Liable for the Negligence of Persons Not in Their Employ.*—It is the duty of a bridge tender in the employ of a city, in turning a bridge, to see that people on it get off in safety, and the city is liable for injuries to persons by reason of his negligence, notwithstanding the act of a third person in the employ of the bridge tender,

for which the city is not liable, and the acts of the bridge tender, co-operate to produce the injury, if the bridge tender's negligence was an efficient and the proximate cause thereof.

3. NEGLIGENCE—*Whether the Proximate Cause of an Injury a Question of Fact.*—The question as to whether the acts of a bridge tender in the employ of the city of Chicago is the proximate cause of an injury, is a question of fact for the determination of the jury.

4. CONTRIBUTORY NEGLIGENCE—*A Question of Fact.*—Contributory negligence is a question of fact for a jury, and where a boy between six and seven years of age was rightfully upon a bridge in the city of Chicago, where he had never been before, and being chased by a man in the employ of the bridge tender with a barrel stave in his hand, hallooing and gesticulating, and being frightened and bent upon getting out of the man's reach, he ran off of the bridge and was injured, the court can not say that the jury were wrong in holding that the boy was not guilty of contributory negligence.

5. INSTRUCTIONS—*Abstract Propositions of Law.*—It is not error to refuse an instruction which merely states an abstract proposition of law.

6. DAMAGES—*Where $5,000 is Not Excessive.*—A boy between six and seven years of age and some companions were upon a bridge in the city of Chicago when it became necessary to turn the bridge for the purpose of making some repairs; a man in the employ of the bridge tender, with a barrel stave in his hands, hallooing and gesticulating, chased them off of the bridge; the boy, evidently frightened and bent on getting beyond the man's reach, ran off of the bridge and was injured. He suffered a compound comminuted fracture of the bones of the leg just below the knee, both bones being shattered and the skin and muscles on the front of the leg torn; he was confined to the hospital for more than three months. The bones of the leg had to be wired together and the wires were not removed for more than a year afterward. After he left the hospital he had to wear a plaster cast for seven months, and could not stand on his foot for two years, suffered great pain and was unable to go to school for nearly three years, and could not at the time of the trial, some six years after the injury, attend school more than half the time on account of the pain and a running sore on his leg. One of the surgeons who treated him testified that the two bones of the leg were massed together as one and did not perform the natural function. *Held,* that a judgment for $5,000 was justified.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Mr. Justice Sears dissenting. Opinion filed June 10, 1901.

**Statement by the Court.**—This is an action by Thomas O'Malley, an infant, aged at the time six years and five

months, by his next friend, to recover for injuries received October 24, 1893, at the Erie street bridge of the city of Chicago. A trial before the court and jury resulted in a verdict in his favor December 8, 1899, of $8,000, from which there was a remittitur of $3,000, and a judgment for the balance, from which this appeal is taken.

The original declaration charges, in substance, after setting out the control by appellant of the bridge in question upon a public street of the city, how it was operated, and the duty of the city in that regard, that appellant was negligent in suffering the approaches of the bridge and the bridge itself over the river at Erie street to be in an unsafe repair and condition, to be and remain unguarded and unprotected, and that appellant negligently and wrongfully operated the bridge, by means whereof plaintiff, who was of young and tender years, to wit, six years and five months, and while he was passing along and over the bridge with other children of like age, and when defendant's agents and servants wrongfully and negligently hallooed at and gesticulated at plaintiff and the other children, and because appellant wrongfully caused the bridge at the same time to be put in motion and turned, became greatly frightened, and while plaintiff and said other children were trying to escape from the bridge, by reason of his fright, and while the bridge was being wrongfully and negligently turned, he ran for the end of the bridge and for the approach thereto at Erie street, the bridge still being in motion, and attempted to jump from the end thereof, and in so attempting he fell unavoidably between the end of the bridge and the approach to Erie street, and by reason thereof received the injuries complained of.

An additional count was filed on the day the verdict was rendered, which is not materially different from the original declaration, except that it alleges that plaintiff was negligently chased from and off the bridge while the defendant was in the act of swinging the bridge, well knew the premises, and then and there continued to swing and keep the bridge in motion, by reason of which negli-

gence plaintiff, while endeavoring to run off and escape from the bridge, while being chased therefrom, unavoidably got his leg caught between the end of the turning bridge and the approach to Erie street, and was caused by the negligent operation of the bridge to fall to the river below, and was thereby injured, etc. The plea was the general issue. Among other instructions asked by the defendant, the court refused the following:

12. "The jury are instructed that the law does not require a city to keep public bridges so that they will be absolutely safe, nor is it required to keep children and others off bridges and their approaches while bridges are being swung. A city is only required to use ordinary care to maintain and operate swing bridges in a reasonably safe manner, and if, while the city is performing its duty in such manner, a person is injured there through his own negligence, through mere accident or through the willful misconduct of another, no damages can be recovered against the city."

21. "The jury are instructed that the City of Chicago is not liable for the act or conduct of persons not in its employ."

22. "The court instructs the jury that the City of Chicago is not liable for the act or conduct of its servants when such act or conduct is within the scope of their duty."

ANDREW J. RYAN and JAMES G. CONDON, attorneys for appellant; JAMES J. KELLY, of counsel.

SULLIVAN & McARDLE and WM. P. HAYS, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

It is claimed that the judgment should be reversed, because there is a material variance between the declaration and the proof, and that even if the declaration corresponded with the proof made, no liability of appellant is shown.

In so far as it is claimed there was a variance between the proof and declaration, the contention can not now be urged. It fails to appear that the alleged variance was, in any way, called to the attention of the trial court, and according to numerous decisions in this and the Supreme

Court, it is too late to raise the question for the first time in a court of review. Swift v. Rutkowski, 182 Ill. 18, and cases cited.

As to the other point, viz., that the proof does not show a liability, even if the declaration was sufficient, we think it is untenable. In this connection it is said that the evidence shows conclusively that Moriarity, who was the bridge tender in charge of and operating the bridge at the time of the injury, was guilty of no negligence personally, but that if there was any negligence shown, it was that of one O'Brien, who was upon the bridge and employed and paid by Moriarity, to whom alone O'Brien was responsible, and that Moriarity alone had the authority to direct and discharge him.

It appears from the evidence, in substance, that O'Brien was not in the employ of the appellant, nor paid by it, but was employed and paid by Moriarity alone, and it does not appear that the latter was in any way authorized or permitted to employ O'Brien to assist him about his work as bridge tender, though he did so, unless such authority is shown by the following questions and answers in Moriarity's evidence, viz.:

Q. "The City of Chicago employed you to attend to that bridge?" A. "Yes, sir."

Q. "And you could attend to it all the time, or employ somebody else, as you saw fit?" A. "As I saw fit; yes, sir."

This, we think, scarcely justifies the contention that O'Brien was employed by appellant. This being true, we think it somewhat doubtful whether there is any liability of appellant for negligence of O'Brien.

Appellant, having no right of control or authority over O'Brien, and there being no satisfactory showing that he was employed by Moriarity, with the assent, express or implied, of appellant, it is questionable, under the authorities, whether appellant is liable for his negligent acts. Bevan's Law of Neg., p. 300; Jewel v. Grand Trunk Ry., 55 N. H. 84–92; Marble v. Worcester, 4 Gray, 395; Conkey

Co. v. Bueherer, 84 Ill. App. 633; Johnson Chair Co. v. Agresto, 73 Ill. App. 384, and cases cited; 1 Dillon on Mun. Corp'ns, Sec. 974, *et seq.;* Patterson's Ry. Accident Law, 103 *et seq.;* Wharton on Neg., Sec. 174, *et seq.;* Milligan v. Wedge, 12 Ad. & El. 366; 1 Shear. & Red. on Neg., Sec. 157, *et seq.*, and notes; Andrews v. Boedecker, 126 Ill. 605.

But it is unnecessary to sustain this judgment that it should rest on the negligence of O'Brien.

It appears from the evidence, in substance, that appellee and some other boys were either playing upon the Erie street bridge, or were temporarily upon it near the center, on their way to a point west of the bridge. The bridge extended east and west across the Chicago river, rested upon a center pier, and was operated by means of a hand lever at its center. One Moriarity was the bridge tender in the employ of the city at the time, had charge of the bridge and its operation, and employed one O'Brien as his assistant, the latter being paid by and acting under the orders and directions of Moriarity. While plaintiff and the other boys were on the bridge, about nine or ten o'clock on October 24, 1893, some men in the employ of the city came to repair the bridge, and it was necessary, while they did their work, to have the bridge sufficiently turned so that teams could not pass over it, but at the same time to allow pedestrians to cross. For some reason, not fully explained in the record, unless it was that Moriarity thought it was a dangerous place for the boys, just at the time when Moriarity was going to move the bridge so as to put it in position for repairs, he told O'Brien to look after the boys, evidently to get them off the bridge, and about the same time rung the bell and proceeded to turn the bridge slowly. O'Brien, acting on Moriarity's direction, took a barrel stave in his hand, began hallooing and gesticulating at the boys, including plaintiff, and chased them in an easterly direction to get them off the bridge. Plaintiff, who stood on the south foot-way of the bridge near the center at the time Moriarity gave the direction to O'Brien, started and

ran toward the east end of the bridge, which was some forty feet away, and as he ran was in full view of Moriarity, who was at the time turning the bridge. By the time that plaintiff got near to the end of the bridge on the foot-way, the bridge had turned so that the foot-way was to the south of the south sidewalk of the street approach to the bridge, and plaintiff turned across and ran into the wagon-way of the bridge, and as he attempted to jump from the moving bridge onto the street approach, his foot and leg went into the space between the end of the bridge and the street approach and he fell thence into the river below, a distance of some twenty-five feet, and was injured. It seems quite clear from the evidence, the details of which it is unnecessary here to set out, that Moriarity was responsible for O'Brien's chasing plaintiff and the other boys from the bridge; that as he moved the bridge he saw the plaintiff running toward the end of the bridge to escape from O'Brien, and notwithstanding, continued in his movement of the bridge, though there was no apparent pressing necessity, nor any necessity, for him to continue to move the bridge at this particular moment of time. It appears, not only from his own evidence, but that of an experienced bridge tender then in the employ of the city and called as a witness by it, that it was the duty of the bridge tender, on moving the bridge, to see that people got on and off it in safety. We think, in view of these facts, as well as other circumstances shown, the jury was clearly justified in finding that Moriarity was negligent and that his negligence, notwithstanding the acts of O'Brien, was an efficient cause for the injury to plaintiff. The charges of negligence in the declaration of wrongfully operating the bridge and wrongfully causing the bridge to turn, under the circumstances shown, are ample to sustain the verdict and judgment. It is sufficient that the negligence of O'Brien, though he was not in the employ of the city, and it was not liable for his acts, and the negligence of Moriarity, both co-operated to produce plaintiff's injury, if the latter's negligence was an efficient and the proximate cause thereof.

Pullman P. Car Co. v. Laack, 143 Ill. 242-61; McGregor v. Reid, 178 Ill. 465-70; N. C. St. R. R. Co. v. Dudgeon, 83 Ill. App. 528, and cases cited; affirmed 184 Ill. 477-88; Boyle v. R. R. Co., 88 Ill. App. 255-9.

Under the evidence in this record, whether Moriarity's negligence was the proximate cause of the injury, was a question for the jury, and their verdict is sustained by the evidence. American Ex. Co. v. Risley, 179 Ill. 295-9; Landgraf v. Kuh, 188 Ill. 485-500; O'Fallon Coal Co. v. Loquet, 89 Ill. App. 14.

Instruction 12 of appellant, which was refused, is an exact duplicate of appellant's instruction 6, given, except the words near its end, " through the willful misconduct of another." These words made the instruction erroneous, because they may be said to allow the jury to find the city not guilty, though the negligence was that of its own employe.

Instruction 21 states an abstract proposition of law, and it was therefore not error to refuse it. Also, we think it liable to mislead the jury, in view of the somewhat complicated circumstances of this accident, and it may not have been clear to the jury to whose acts and conduct the instruction was intended to apply.

The 22d instruction also states an abstract proposition of law, and besides, is not correct in the use of the word "duty," and the omission of the word "not" before the word "within." Negligence is not within the scope of a servant's duty.

It is also said that plaintiff was guilty of contributory negligence, and is therefore not entitled to a recovery. We think this was a question for the jury, and their verdict is justified. Plaintiff was only six years and five months old, had never been upon this bridge before, was rightfully there, and was being chased by a man with a barrel stave in his hand, hallooing at him, and was evidently frightened and bent upon getting beyond the man's reach. Considering these circumstances, that he was placed in this, to him, perilous position without his fault and by the direction of Moriarity, we can not say that the jury were wrong in hold-

ing that he was free from contributory negligence.  R. R. Co. v. Anderson, 184 Ill. 294–304;  D. T. & W. Co. v. Dandelin, 143 Ill. 409–14;  C. & G. T. Ry. Co. v. Kinnare, 76 Ill. App. 394;  I. C. R. R. Co. v. Lindgren, 80 Ill. App. 609.

The only remaining claim of appellant is that the damages are grossly excessive.  It appears from the evidence that plaintiff suffered a compound comminuted fracture of the bones of the leg just below the knee; both bones were shattered—slivered; that the skin and muscles on the front of the leg were torn; that he was confined to the hospital for more than three months, where he suffered great pain; that the bones of the leg had to be wired together and the wires were not removed for more than a year after the injury; that after he left the hospital he had to wear a plaster cast for seven months, and could not stand on his foot for two years; did not sleep well, suffered great pain, was unable to go to school for nearly three years after the injury, and could not at the time of the trial, some six years after the accident, go to school more than half the time, because of pain and a running sore on his leg; that he had a scalp wound, through to the bone; that in winter it was necessary to keep his leg in warm water for two hours a night.

Three surgeons testify as to the injuries.  One of them, Dr. St. John, a surgeon of long experience, says that there is a loss of muscles of the leg and of healthy skin and bone; that the tibia has lost some of its front surface; that the skin on the leg is very thin, not healthy, is fastened to the bone, and is immovable at the place of the injury; that the leg will be painful whenever motion of the foot or bending of the knee is sufficient to stretch the skin; that the skin, not being healthy, is apt to burst down, and that the injuries are permanent.  Dr. Flood, who treated the boy, says that the two bones of the leg are massed together as one, and do not perform the natural function.  Considering this testimony and other evidence not here set out, none of which is in any way contradicted, we are of opinion that the damages are entirely justified.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE SEARS dissenting:

I am of opinion that the 21st instruction tendered by counsel for appellant should have been given, and that it was error to refuse it.

The instruction is as follows: " The jury are instructed that the City of Chicago is not liable for the act or conduct of persons not in its employ."

It is difficult to see why this instruction, which specifically refers to one of the litigants and imposes a limit to its liability, should be held to be merely an abstract proposition of law.

The instruction approved in the case of W. C. St. R. R. Co. v. Estep, 162 Ill. 130, and held not to be merely an abstract proposition of law, was quite as much open to the objection as is this instruction. If in that instruction the use of the word plaintiff applied it to the case on trial, and saved it from being a mere abstract proposition, it would seem clear that the specific reference to one of the litigants, viz., the city, and a direction as to its liability, would equally operate to apply this instruction to the case at bar and save it from being a mere abstract proposition.

Nor can I see how, under the evidence here, the instruction could possibly mislead the jury.

The evidence shows without conflict that Moriarity was, and O'Brien was not, in the employ of the city.

The amended *narr.* charges that the city " carelessly and negligently frightened the said plaintiff and chased him from and off said bridge," etc., whereby, etc.

The only evidence to sustain this allegation was evidence to show that O'Brien thus frightened the plaintiff. O'Brien was not in the employ of the city. The instruction was proper, appropriate, and should have been given. It is not covered by any other instruction given, and it was essential to the appellant's fair defense.