THE DUNHAM TOWING AND WRECKING COMPANY

*v.*

EMILY DANDELIN, Admx.

*Filed at Ottawa October 31, 1892.*

1. APPEALS—*reviewing questions of fact.* Whether the evidence fails to show that the defendant was guilty of negligence, or shows the want of ordinary care and such contributory negligence on the part of the plaintiff's intestate as will preclude a recovery of damages on account of his death, are questions of fact, which are conclusively settled in favor of the plaintiff by the judgments of the trial and Appellate Courts finding for the plaintiff.

2. SAME—*question of sufficiency of the evidence—how raised in this court.* Where the defendant, at the close of the plaintiff's case, enters a motion to exclude the evidence and to instruct the jury to find for him, if he, on the denial of his motion, introduces evidence to overcome the case made by the plaintiff, and fails, after the close of the evidence on both sides, to renew such motion, this court will not, on appeal or error, be required to pass upon the question whether the evidence is sufficient to establish a cause of action or justify a recovery by the plaintiff.

3. SAME—*assignment of errors—must be on some ruling, and not on reasons given by Appellate Court.* Assignments of error made in this court, not based on the judgments of either the circuit or Appellate Courts, or any ruling made by either court, but which are predicated upon the reasons given in the latter court for the affirmance, are not authorized, and can not be considered.

4. PRACTICE—*exceptions to instructions must be taken on trial.* At the close of the evidence in an action against two defendants, the court, on motion of one of the defendants, instructed the jury to find in his favor. The other defendant failed to object to the instruction, or to except to the action of the court in giving the same: *Held,* that on appeal he could not be heard to complain of such instruction.

5. Instructions—*when properly refused.* Where the legal principle incorporated in an instruction refused is fully and fairly stated in other instructions given, and there is no evidence fairly tending to prove the facts on which the instruction is based, and it assumes that certain acts constitute negligence *per se,* such instruction is properly refused.

6. Negligence— *contributory—one suddenly placed in a position of peril.* Where a person is involuntarily, through the fault or negligence of the defendant, placed in a situation of apparent peril to life or limb, and by reason thereof is confronted with sudden danger, then the law does not require of him the same degree of care and caution that it does of a person who has ample opportunity for the full exercise of his judgment and reasoning faculties.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

Mr. Robert Rae and Messrs. Gurley & Wood, for the appellant.

Mr. S. B. Foster, and Mr. E. J. McArdle, for the appellee.

Mr. Justice Baker delivered the opinion of the Court:

This suit was brought by Emily Dandelin, administratrix of Joseph Dandelin, deceased, against the Dunham Towing and Wrecking Company, appellant herein, and against one O. E. Larson, owner of the schooner, "Lookout," to recover damages for causing the death of her intestate through their negligence. The results of a jury trial in the circuit court of Cook county were verdict and judgment in her favor against the appellant, and the judgment was affirmed by the Appellate Court.

The Santa Fe slip is a body of water connected with and extending from the South Branch of the Chicago river. It is of an uniform width of one hundred and fifty feet, except near its junction with the river, where it widens considerably. On the east side of the slip, and extending from a point near the river bank, is the Santa Fe elevator. On the west side of the

elevator, which is the side next to the slip, are nine chutes, about thirty feet high, by which grain is loaded into vessels. On the 28th day of May, 1889, Joseph Dandelin and his brother Felix were at work repairing the cast-iron hoods that cover the upper ends of the chutes, and they had been so employed for several days prior to that date. It is twelve feet from the dock line to the side of the elevator, and while at work Joseph Dandelin and his brother stood upon a scaffold, which was about twenty-eight feet above the dock and hung below the hoods, and was fastened with ropes which hung from windows about sixty-four feet above such scaffold. At the time of the accident they were working at chute No. 8, the second chute from the north end of the elevator.

The appellant, a corporation engaged in the business of towing and wrecking, was the owner of the tug, "Robbie Dunham," the crew of which, at the time of the transactions here involved, were endeavoring, with the tug, to take the schooner "Lookout" out of the slip. The water on the west side of the slip, where the schooner was moored, was so shallow that the tug could not get alongside of her, and the schooner was connected with the tug by a line some one hundred or one hundred and twenty-five feet long, one end of which was fastened to the stern of the schooner and the other to the tug. The tug then gave the schooner a pull, for the purpose of getting her into deeper water, the intention being to afterwards make fast the tug alongside the schooner, and thus give the former full control of the latter. The pull that was made was not only sufficient to get the schooner into deep enough water, but to give to her a considerable degree of headway or impetus, and immediately after such pull the tug dropped the stern line, and thereupon, the wind blowing briskly from the east, the stern of the "Lookout" began to swing towards the west and the bow towards the east and towards the elevator. Before the tug could make fast to the schooner by the bow line and shove the stern of the schooner in towards

the elevator, thereby swinging her bow out and away from the
elevator, the guy rope leading from the end of the jib-boom to
the mast of the schooner caught the corner of the scaffold upon
which Joseph Dandelin and his brother were standing, and at
or about the same instant the jib-boom struck the side of the
elevator and the chute. The jib-boom was broken so that it
fell away, the spout from the elevator was turned around, the
scaffold was partially wrecked, the south end of the scaffold
was shoved under the hood, and Joseph Dandelin fell to the
dock below and was killed by the fall. The evidence shows
that immediately before the accident Joseph Dandelin had
hold of the rope which supported the south end of the scaffold,
and tends to show that at the time of the contact he let go the
hold of either one or both hands on the scaffold rope, and either
seized or pushed or shoved the jib-boom stay of the "Lookout."

Counsel for the appellant, in their brief filed in this court,
strenuously insist that the evidence does not show that the
appellant corporation was guilty of culpable negligence, and
that even if it does, it also shows such want of ordinary care
and such contributory negligence on the part of the deceased
as will prevent his administratrix from recovering damages on
account of his death. These are both questions of fact, that
were conclusively settled in favor of appellee by the judgments
of the trial and the Appellate Courts. This court, in a suit
such as this, will review the evidence only when such steps
are taken in the trial court as give us the power and impose
upon us the duty of making such a review. It is true that at
the close of the case made by the plaintiff below, the appellant
entered a motion that the evidence be excluded from the jury,
and that they be instructed to find a verdict in its favor; but
that motion was denied, and appellant then introduced testi-
mony to overcome that which had been produced by the plain-
tiff, and after the introduction of its own testimony it did not
renew its motion to exclude evidence, nor ask the court to in-
struct the jury to return a verdict finding the issues for it, the

appellant. The late case of *Joliet, Aurora and Northern Railway Co.* v. *Velie,* 140 Ill. 59, is in this regard on all fours with this, and is conclusive that on this appeal the question whether as matter of law, the evidence is sufficient to establish a cause of action or justify a recovery, does not arise.

It appears from the record that at the trial, when the plaintiff below rested her case, the defendant Larson moved that the evidence be excluded from the consideration of the jury so far as he, said Larson, was concerned, and that the jury be instructed to find for him; that when the evidence was all in, said motion was renewed, and that the court instructed the jury, in writing, to find the defendant Larson not guilty, and in the same instruction told the jury that no inference as to what their verdict should be as to the remaining defendant was to be drawn from the fact of the direction to find Larson not guilty. It is assigned as error that the court gave this instruction, and it is claimed that the instruction worked a direct injury to appellant. It is useless now to inquire whether the instruction was proper under the circumstances of the case. Appellant did not object to the instruction at the trial or except to the action of the court in giving it. If it considered the instruction, or the ruling of the court dismissing Larson out of the case, detrimental to its rights and interests, it should not have acquiesced in what the court did in the premises, but should have saved an exception. Having remained silent when it was called on to speak, appellant can not now be heard to object.

The court refused to give to the jury the following instruction, which was asked by appellant:

"The jury are instructed that if they believe, from the evidence, that the plaintiff's intestate contributed, by his own negligence, to the accident which resulted in his death, by laying his hand upon the jib-boom stay of the schooner in question, and that had he remained upon the scaffold at the place where he had been working the injury complained of

would not have occurred, then the jury are instructed that the plaintiff can not recover in this case, unless such negligence was slight and that of the defendant, the Dunham Towing and Wrecking Company, was gross in comparison."

There was no error in refusing it. The legal principle incorporated in it was fully and fairly stated in other instructions that were given. Moreover, instructions should be based on the evidence. The words, "had he remained upon the scaffold at the place where he had been working," imply that the intestate voluntarily left the scaffold at or prior to the time of his fall. There is no evidence that proves, or tends to prove, such a theory. And besides this, the instruction improperly assumes that the supposed acts of the deceased constituted negligence *per se*.

It was claimed at the trial by appellant, and is now claimed in its brief and argument, that the intestate laid hold of the jib-boom stay of the schooner at the time that the jib-boom struck the elevator and spout, for the purpose of easing the vessel off, and that by reason of the breaking and falling away of the jib-boom at that instant he pitched forward and fell to the dock, and that such conduct on his part was such want of ordinary care, and such negligence contributing to the injury, as precludes a right of recovery. Appellant submitted to the court, in that connection, two instructions in regard to the ordinary care that the law required of said intestate,—the matter of contributory negligence on his part, and the doctrine of comparative negligence. The court, over the objections of appellant, modified each of these instructions by adding thereto the qualification, that if, through the negligence of the officers and crew of the tug, "Robbie Dunham," said intestate was placed in a position of peril, and by reason thereof confronted with sudden danger, then the law did not require of him the same degree of care and caution that it does of a person who has ample opportunity for the full exer-

cise of his judgment and reasoning faculties. It is assigned as error that the court so modified said instructions.

In *Chicago and Alton Railroad Co.* v. *Becker, Admr.* 76 Ill. 25, this court said: "Where, for instance, the defendant has been guilty of negligence, but seeks to defend on the ground that the party injured might have avoided the injury by the exercise of ordinary care and caution, it sometimes happens in such cases that, as a direct and immediate cause of the defendant's negligence, the party injured was placed in a position of compulsion and sudden surprise, bereft of independent moral agency and opportunity of reflection. In such a case it would be against the common judgment of mankind to hold the injured party either morally or legally responsible for contributory negligence." And in *Wesley City Coal Co.* v. *Healer,* 84 Ill. 126, this court said: "It has long been settled that a party having given another reasonable cause for alarm can not complain that the person so alarmed has not exercised cool presence of mind, and thereby find protection from responsibility for damages resulting from the alarm."

*Jones* v. *Boyce,* 1 Starkie, 493, was an action on the case against a coach proprietor. The plaintiff, a passenger, became alarmed and jumped off a coach, in consequence of which his leg was broken. The proprietor was held liable although the coach was not actually overturned. The judgment was based on these grounds: that there existed a reasonable cause for alarm, and that since the original fault was in the proprietor, he was liable to the plaintiff for the injury which his misconduct had occasioned.

*Galena and Chicago Union Railroad Co.* v. *Yarwood,* 17 Ill. 509, was a case against the appellant for personal injuries, and this court held, in favor of the appellee, that a person under imminency of peril was not required to exercise all the presence of mind and care of a prudent, careful man, but that the law made allowances for him.

In *Mark* v. *St. Paul, Minneapolis and Manitoba Railway Co.* 30 Minn. 493, it was held that where one, without his own fault, is, through the negligence of another, put in such apparent peril as to cause in him terror, loss of self-possession and bewilderment, and, as a natural result thereof, he, in attempting to escape, puts himself into a more dangerous position and is injured, the putting himself in such more dangerous position is not, in law, contributory negligence that will prevent him recovering for the injury.

In 4 Am. and Eng. Encyclopædia of Law, page 49, it is said: "And even though the injured person might have escaped the injury so brought upon him but for his hasty and mistaken conduct in the face of danger, yet defendant's negligence is the sole juridical cause of the injury, and plaintiff's error of judgment only its condition, when plaintiff was placed in the position of danger without previous negligence on his own part." See, also, numerous cases cited in notes on pages 48, 49 and 50 of 4 Am. and Eng. Ency. of Law.

The authorities clearly show that the modifications made by the court to the instructions asked were not erroneous, and that they were eminently proper under the circumstances of the case on trial.

Several of the assignments of error that are made in this court are not based on the judgments of either the circuit or Appellate Courts, or any ruling made by either court, but are predicated upon the reasons which were given in the opinion of the latter court for their affirmance of the judgment of the trial court. It seems to us that counsel misapprehend the scope and meaning of that opinion; but, be this as it may, said assignments are unauthorized, and will be disregarded. *Christy* v. *Stafford,* 123 Ill. 463.

There is no error in the record. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*