**John Todd, Appellee, v. Oscar Daniels et al., Appellants.**

**Gen. No. 14,984.**

1. EVIDENCE—*effect of admission of counsel.* An admission of counsel made in open court with respect to the issues of a pending cause, has the same force and effect as testimony.

2. NEGLIGENCE—*what relieves injudicious act from imputation of.* An emergency order necessarily given on the spur of the moment in an effort to avoid an accident, though injudicious, is not subject to the imputation of negligence because of the lack of time to form a correct judgment.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1908. Reversed. Opinion filed March 17, 1910.

**Statement by the Court.** The action is case for personal injuries, and the relation of the parties at and prior to the accident in which plaintiff was injured was

that of master and servant. Plaintiff was working in the capacity of "hoisting engineer" for defendants, who were engaged in erecting a bridge across the Iowa river near Curtis, in the State of Iowa. Todd was in charge of an engine which was operating a boom derrick on a car which was on a railroad track. At the time of the accident plaintiff was engaged, under a foreman whom he alleges was not a fellow servant, in hoisting a certain iron beam weighing about 16 tons. The declaration charges that the foreman directed plaintiff to a point where the track was on an embankment, to lift the beam, that he did so with the "hoisting machinery;" that the car carrying the machinery was moved a short distance down an incline in the track; that by reason of the beam being carried down the incline, and for other reasons not averred specifically, it is charged that the beam swung back and forth on its supporting cable; that in this situation the foreman gave plaintiff a signal to suddenly lower the beam; that it was the duty of defendants to furnish plaintiff a reasonably safe place in which to work; that defendants wholly failed to do so, and carelessly, etc., ordered plaintiff to lower the beam when it had swung beyond the embankment upon which the car was resting, which plaintiff did in obedience to said order, and that the beam then and there, by reason of being lowered beyond the centre of gravity of the car and derrick, jerked the derrick and car and turned them over on their sides and threw plaintiff with force, etc., to the ground, under the machinery and derrick, whereby he was injured.

An eye witness of the accident testified that after the train crew picked up the girder the car was started out toward the piers; that when they reached the trestle, the girder being out over the trestle, a strong wind was blowing from the south and caught the girder; that two men who had hold of the head of the girder held it in position, but the men in the rear of the girder were unable on account of the force of the wind to hold their end in position and it swung toward the east over the

end of the bridge so far as to cause the car to "cant" over and raise its wheels from the track on the west side; then the car foreman gave an order to plaintiff to lower the load, which he did.  At the time this order was given one end of the girder had gone so far to the east that when it dropped it struck on one of the pile caps, where it rested a moment.  The car then righted and the girder started downward, when suddenly the cable became taut, when the girder was about ten feet from the ground.  The boom was in such a position that the weight thrown upon it by the girder overturned the car.  Plaintiff had under his management all the machinery controlling the raising, lowering and stopping the load.  The cables, derrick and machinery were all in good condition just before the accident and the cable did not break.  Another witness testified that at the time of the accident he was operating a "nigger head" on the car which was being used to propel the car forward, ropes being attached to the trestle work ahead and being wound on the nigger head, "thus moving the car."  When the car reached a point where there was an incline in the track, the girder being over the trestle ahead of the car, in order to keep the girder from touching the ties it was raised a little, and while this was being done a sudden gust of wind blew the far end toward the east, when the men on that end immediately put their weight on it and held it down on top of the trestle.  The wind then blew the opposite end, which the men were unable to hold or control, and the car started to tip and the order was immediately given to lower the load, which order plaintiff obeyed.  The car seemed for a moment to right itself until the lowering suddenly stopped, when the car tipped over and the car and the girder rolled down the east side of the bank and the plaintiff with them. Just what caused the lowering to suddenly stop, no witness directly discloses, but from all the testimony on this subject, the situation of the car, the hanging of the girder over the embankment, the depth of the em-

bankment, the condition of the cable, etc., it would seem to us that the sudden stoppage resulted from the fact that the extremity of the cable was reached before the girder reached the foot of the embankment prior to the descent of the car with the machinery resting upon it. The vice president of the defendant company testified that plaintiff told him the morning after the accident that he had the girder swung properly; that it was running parallel in the tracks, and so far as he could see everything was in fine shape, when suddenly a gust of wind came up which "shoved" the end of the girder; that the first thing which occurred to him was to drop the load, "so as to hit it in the center," but he was not quick enough to do it; he worked the clutch to make it drop as above, but could not; "it was too fast" for him. Defendants offered in evidence a sworn statement made by plaintiff the day after the accident, in which he swears: "I was the engineer of derrick car, Oscar Daniels Company number four, and was running the engine on said car on March 1st, 1904, erecting the span of the Curtis bridge when the car overturned and killed Hans Halverson. I further say that the car and engine were in first class order and that the accident was not caused by any defect in the engine, car, lines, cables, tackles, or any other appliances then being used by the Oscar Daniels Company. In my opinion the accident was caused by a sudden gust of wind blowing an end of the girder around, thereby throwing the weight on the side of the car; and that accident was unavoidable and everything that could be done to prevent same was done. The boom was a good one and broke after fall."

The jury rendered a verdict of guilty with damages assessed at $995, upon which a judgment was entered after the overruling of motions for a new trial and in arrest of judgment.

EDDY, HALEY & WETTEN, for appellants; CHARLES H. PEGLER, of counsel.

JOHN A. BLOOMINGSTON, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

While reversal is asked for several errors assigned on the record, in the view we take of the case but one question calls for our decision, which being answered in the negative, all other questions raised by counsel cease to be important. Such question is: Does the evidence sustain the charge of negligence in the declaration?

And in the solution of this question we are aided by the narrowing of the issues to the claim "that a wrong order was given." The undisputed colloquy of the trial judge with plaintiff's counsel so demonstrates. The court said: "Then the machinery of the apparatus was in good working condition. They do not claim it was not. All they claim is that a wrong order was given. The whole case turns on that. That is right, isn't it?" To which counsel for plaintiff responded, "That is true." Counsel for plaintiff confined his argument to this point. Such is the *gravamen* of the charge in the declaration; that the duty of defendants was to furnish plaintiff a reasonably safe place in which to work, and that the falling of the car was the result of a careless order of defendant's foreman. The evidence conclusively proves that the crane car, with its machinery and tackle, was in every respect in good order and condition, and that the place on the car where plaintiff was working was in every respect a safe place normally for him to do his work. The admission above set out has the same force and effect as the testimony, and in this respect, therefore, our conclusion is not subject to challenge. The accident did not result from any defect in any appliance in use at that time, or by reason of the lack of safety of the car; but it was brought about by the meeting of an unexpected antagonistic force in the form of a strong gust of wind. That the accident occurred as detailed

by plaintiff in the affidavit which he made the day after its happening is not only sustained by the testimony of all the witnesses, but is not seriously disputed by any one. Therefore we are narrowed down to the one remaining point—was the order a wrong order, and if it was so proven to be, was it given in an emergency when there was no time for deliberation or thought, so that negligence is not imputable, because if there had been time for deliberation a different order could have been given which would have averted the disaster which followed the so-called "wrong order." There is reliable evidence supporting the theory that the order given to lower the girder was the right order to give, and its successful carrying out the only means of averting the threatened accident. The gust of wind was not anticipated by any one engaged at the work with plaintiff. The peril of all on the car was suddenly made imminent. There was no time for anything but instant action. Instinct and not deliberation was the only faculty the exercise of which might save the situation. All that could be done was done, and it may be if the cable had been sufficiently long to have reached a resting place with the girder, the wisdom of the method employed to save the car from falling over the embankment might have been demonstrated. As plaintiff swore the day after the accident, when the occurrence and all the circumstances attending it were vividly in his mind, the accident was caused by a sudden gust of wind, the accident was unavoidable, and every thing possible was done to prevent it. The order to lower the girder was an emergency order, necessarily given on the spur of the moment in an effort to avert an accident which was momentarily threatening the crane car and those working upon it. Even if the judgment thus exercised was not the most judicious, the lack of time in which to form a more correct judgment relieves the act from an imputation of negligence. C. B. & Q. R. R. v. Peterson, 32 Ill. App.

139; Dunham v. Dandelin, 143 Ill. 409; Union Traction v. Newmiller, 215 *ib.* 383.

It is plain from any viewpoint of the facts in this record that no negligence charged is sustained by the proofs, and the judgment of the Circuit Court is reversed.

*Reversed.*