# Max Loescher, Appellee, v. Consolidated Coal Co., Appellant.

1. MASTER AND SERVANT—*fellow-servants defined.* Fellow-servants are servants of the same master, who are directly co-operating with each other in the particular business in hand, or whose usual duties bring them into habitual association so they may exercise an influence upon each other, promotive of proper caution. ·

2. MINES AND MINERS—*fellow-servants.* Where mine employees are divided into gangs to sprinkle entries, haul dirt and to perform other work at night to keep the mine in condition, so as not to interfere with the operating of the men during the day, a dirt loader riding on a car, who is injured by a sprinkling car being negligently left in an entry, is not, as a matter of law, a fellowservant of employees in charge of the sprinkling car.

3. MASTER AND SERVANT—*vice principal.* Where a dirt loader and hauler, riding in a mine on a car, hauled by a mule, is injured on jumping from the car which was coming out of an entry, round a curve and at down grade, to avoid a collision with a sprinkling car that had been left near the junction point of an intersecting track, the negligence in leaving the sprinkling car in such position is attributable to a vice principal, who knew that the plaintiff was liable to come out of the entry at any moment and that the position of the sprinkling car was dangerous, and reasonable care on the part of the vice principal required that he should see that the men on the sprinkling car, under his direction, should move it back from the danger point.

4. MASTER AND SERVANT—*notice to master of defects.* The rule that notice to the master of defects and dangers in appliances and places is necessary before he can be held liable for an injury to a servant, has no application when the dangerous condition is caused by the act of the master himself or by his vice principal.

5. MASTER AND SERVANT—*notice to master of obstruction in mine.* Where a mine employee riding on a car jumps therefrom to avoid collision with a sprinkling car obstructing the passage, it cannot be contended that as the obstructing car only remained there three minutes it was not notice to the master of the dangerous condition, when the negligence causing such condition to arise is attributable to a vice principal.

6. MASTER AND SERVANT—*leaving place of safety to avoid sudden peril.* Where a mine employee, riding on a car hauled by a mule, jumps therefrom as it comes around a curve and at a down grade to avoid the sudden peril of a collision with an obstructing car, and he would have been safe from injury if he had remained upon

the car, he is not guilty of contributory negligence as a matter of law. ·

7. MASTER AND SERVANT—*instruction.·* Where a mine employee riding on a car jumps therefrom to avoid collision with an obstructing car, an instruction that if a person could have remained on the car with safety and a person of reasonable prudence would have done so, then if plaintiff did become badly frightened and jump from the car and was injured he could not recover, may be rejected where other instructions inform the jury, that if plaintiff was not in the exercise of reasonable care when he jumped from the car he could not recover.

8. MASTER AND SERVANT—*instructions.* Where a mine employee riding on a car is injured in jumping therefrom to avoid a collision with an obstructing car and the evidence is undisputed, that the obstructing car was placed in position by the direction of a vice principal, there is no evidence to support an instruction that although such car was left on the track, yet if no officer or agent of the mining company had reasonable time to know the fact and have it removed, the plaintiff could not recover. .

9. DAMAGES—*excessive.* A mule driver in a mine had his wrist broken and lost several finger joints in an accident and was confined to his bed for three months. His wrist and a finger joint remained more or less stiff and he suffered some pain when he worked, but he resumed his occupation and earned the same wages, two dollars and seventy-five cents a day. *Held,* a verdict for $5,000 was excessive and would be reduced by requiring a remittitur to $3,500.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. M. MILLARD, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 7, 1912:

WISE, KEEFE & WHEELER, for appellant; R. B. HENDRICKS and MASTIN & SHERLOCK, of counsel.

WEBB & WEBB, for appellee.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

This cause was submitted to a jury on the second count of appellee's declaration which charged that appellant was operating a coal mine; that among its entries were the main north and first west leading

therefrom, that each contained hauling roads; that the road in the first west entry connected with the road in the main north and that they were used by men, mules and cars in the operation of said mine; that appellee was in the employ of appellant; that it became his duty to drive a mule in hauling dirt, rock and other substances from the first west to a certain third east entry and in doing so he was required to pass over the hauling road in said first west entry and thence on the hauling road in the main north, and thence over that to the road to the third east; that appellant negligently suffered a water car to be and remain on the road in said main north entry at a point where it knew, or could have known by the exercise of due care, that appellee was required to pass in hauling said material; that while appellee was driving a mule hitched to two loaded cars near said water car, and in the exercise of due care and without notice of the existence of said car, his mule saw the car and turned from the track whereupon appellee, fearing injury to himself if he remained on said car, jumped therefrom with due care and was thereby thrown to the track and his hand was run over, cut and mashed by one of said cars, and he was permanently injured, etc.

There was no conflict in the testimony. Appellee who was employed in the mine of appellant on the evening of the accident which resulted in his injuries, was directed by his superior, the pit boss, to hitch a mule to two empty cars, and go to an entry called the "first west off the north" and load them with dirt. The mule was hitched to the front car by a tail chain about five feet long fastened to the car at one end and to the mule's harness at the other end. After hitching the mule, appellee with four other men who went along to load the cars, went into the first west entry about three hundred and fifty feet off the main north where the cars were loaded, and appellee started out with his trip. One of the loaders was riding on top of the dirt on the first car and the other three were riding on the

second car. As they came out of the entry appellee was riding on the front end of the front car next the mule with his feet dangling. No lines were used on the mule and he was driven and governed by the driver's voice. If the mule was to stop the driver would say "whoa" and put his hands on the mule's hips. As appellee came round the curve leading out of the first west towards and near its junction with the main north, he saw some one flagging him with a lamp to stop. The light was about fifteen feet in front of him when he first saw it. The man flagging was at the water car standing on the track in the main north entry at a point just beyond where the track out of the first west intersected it. Appellee did not see the water car in the darkness but the mule coming to it turning out off the track, and the flagging apprised him there was an obstacle in front, and becoming alarmed he jumped from the car. The mule after turning out, turned clear around just as appellee jumped and shoved him under the front car where the hind wheel passed over his hand. The water car was not at that place on the track when appellee went into the first west after his loads, and he had no knowledge of its presence there when he came out.

It is first insisted that if appellee's injury was the result of any negligence other than his own, it was that of fellow-servants, and as the testimony was undisputed, that the question was one of law for the court and it was error not to direct a verdict for appellant.

Appellant had a class of labor called company work which was performed during the night time so as not to interfere with the operation of the mine during the day in mining and hoisting coal.

In this work appellant employed a number of men among whom was appellee, and the work consisted in repairing tracks, sprinkling entries, hauling dirt, etc. In the distribution of the work to be done the night boss who had supervision of all the men so engaged

would separate them into gangs to perform the various kinds of work and distribute them in various parts of the mine. On this occasion appellee and the four men with him were placed in one gang to load and haul dirt and debris in the manner and from the place already described. Another gang consisting of two persons were detailed to take the water car and sprinkle the roads of the mine which included the road appellee was required to drive over. Neither gang had any connection with or anything to do with the performance of the duties of the other; each gang performing its own duties entirely distinct from the other.

Fellow-servants are defined to be servants of the same master who are directly co-operating with each other in the particular business in hand, or whose usual duties bring them into habitual association so they may exercise an influence upon each other promotive of proper caution. C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302; Same v. Snyder, 117 Ill. 376; Coal Co. v. Holenquist, 152 Ill. 591.

It is not claimed that appellee and those operating the water car were directly co-operating with each other in the particular business, but it is said they were a body of men whose general duties were to keep the mine in condition; that they were co-operating to the same purpose and that there was a code of signals in the mine used to avoid collisions. Notwithstanding the general purpose, appellee had nothing whatever to do with the water car or its operation and there was no habitual association among them in the performance of their several duties when divided into gangs, whereby each might have an influence upon the other promotive of proper caution, so as to bring them within the second branch of the rule defining fellow servants.

In C. & A. R. R. Co. v. Kelly, 127 Ill. 644, it was said "That in order to constitute servants of the same master fellow-servants within the rule *respondeat su-*

*perior,* it is not enough they are engaged in doing parts of the same work or in the promotion of some enterprise carried on by the master not requiring co-operation nor to bring the servants together or into such personal relations that they can exercise an influence upon each other promotive of proper caution in respect of their mutual safety, but it is essential they shall be at the time of the injury directly co-operating in the particular business in hand or that their mutual duties shall bring them into habitual consociation so that they may exercise an influence upon each other promotive of proper caution." To the same effect is Rolling Mill Co. v. Johnson where it was also said: "The relations of the servants must be such that each as to the other by the exercise of ordinary caution can either prevent or remedy the negligent acts of the other or protect himself against its consequences."

The evidence did not as a matter of law bring appellee and those who controlled and operated the water car within the rule of fellow-servants.

Aside from the question raised that appellee and those in charge of the water car were fellow-servants there was evidence that the negligence complained of in leaving the water car on the track in the way of appellee was attributable to the boss Powell, who was a vice principal. Powell knew appellee had gone into the first west entry after his loads and that he might come out at any moment, and he knew that to leave the water car on the track of the main north at a point close to and south of the junction of the first west, would be a dangerous obstacle to appellee in coming out round a curve and at down grade. When the water car came from the north over the main north track it ran about twenty-five feet south of the junction of the track of the first west where the men in charge found an empty car standing on the track. Just then Powell reached there from the south end and he says it was necessary for the men in charge of the water car to back up in order to get the empty car out of the way onto

a switch that extended east. The water car was backed to a point near to but not beyond the junction, leaving it in a dangerous place for appellee in case he came out while it remained there. With Powell's knowledge of the situation and the dangers of leaving the water car in the way of appellee, it cannot be said that reasonable care on his part did not require that he should see that the men on the water car then under his direction and control should move it back beyond the junction where there was no danger of a collision.

It is urged, however, that the water car only remained there about three minutes while the men were getting the empty out of the way and that was not notice to the master of the dangerous condition.

The rule that notice to the master of defects and dangers in appliances and places is necessary before he can be held liable, has no application when the dangerous condition is caused by the act of the master himself or by his vice principal, as was the case here.

It is next contended that appellee was guilty of contributory negligence. One confronted with sudden peril cannot be expected to act with the same degree of care and caution that is to be expected of one who has ample opportunity for the full exercise of his judgment and reasoning faculties. Appellee would have been safe from injury if he had remained upon the car, but he is not as a matter of law to be held guilty of contributory negligence under the circumstances shown, where the conditions which occasioned his fright and caused him to jump were made by the negligence of the master. Wesley City Coal Co. v. Healer, 84 Ill. 126; Dunham Towing & Wrecking Co. v. Dandelin, 143 Ill. 409. Whether appellee was guilty of contributory negligence was a question for the jury.

Complaint is made of the action of the court in refusing to give appellant's first and third refused instructions. The first told the jury that if a person could have remained on the car with safety and that a person of reasonable care and prudence would have done

so, then although appellee did become badly fright-
ened and jump from the car and was injured he could
not recover.   The instruction in substance and effect
only told the jury that if appellee was not in the exer-
cise of reasonable care when he jumped from the car
he could not recover, and this the jury was told in
appellant's two last instructions.   The third refused
instruction was based on the proposition that although
the water car was left on the track, yet if no officer or
agent of appellant had reasonable time to know the
fact and have it removed, appellee could not recover.
Kostich testified that Powell said "push water box back
and switch empty in the first east.   I pushed water
box back two or three feet and Powell told us what to
do."   This testimony is undisputed and shows the
water car was pushed back by Powell's direction and
that he knew it was not pushed back beyond the junc-
tion with the first west entry.   Powell does not dispute
this and says it was not his duty to flag appellee or
have him flagged and he took no means to do so.   There
was no evidence upon which to base the instruction
that no agent of appellant had reasonable time to
know the water car was on the track and it was prop-
erly refused.

Finally it is claimed the damages are excessive.
The amount recovered was $5,000.   There was no evi-
dence of the extent of appellee's injuries except the
testimony of appellee himself.   He said he suffered
a broken wrist (whether of one or both bones does not
appear); that he lost the first and second joints of the
first finger; the second finger up to the hand; that the
third finger was stiff, the joint at the end being broken;
and all of the joints of the fourth finger were stiff; that
the nerve at the end of the first finger was exposed;
that his wrist was a little stiff and pained him when he
worked with it; that his thumb was all right and that
he had to grip with it and the stub of the first finger.
He further said he was confined to his bed nearly three
months and did not work for eight months.   Since then

534    APPELLATE COURTS OF ILLINOIS.

Romono Oolitic S. Co. v. Missouri V. B. & I. Co., 173 Ill. App. 534.

appellee has been working as a driver, the same occupation he had before he was injured, and earns the same wages, two dollars and seventy cents per day. His injuries do not incapacitate him for a driver. There is no evidence of any expense for medical or surgical attention. It would serve no good purpose to cite and comment upon the great number of cases where the measure of damages has been considered. Just compensation in money is the measure to be awarded him under the law. He is able to earn as much since his recovery as before but he is entitled to compensation for the injury to his hand and the loss of some of its members, and also for his pain and suffering and loss of time. There is no rule by which such damages are to be measured except a sort of general rule which arises from what is usually recovered in such cases. Tested thus, it seems to us that the amount recovered is excessive and that thirty-five hundred dollars would be a full compensation. The court erred in not allowing the motion for a new trial on this ground. In all other respects the judgment is affirmed. If appellee will file a remittitur in this court within thirty days of fifteen hundred dollars the judgment will be affirmed for thirty-five hundred dollars; otherwise it will be reversed and remanded.

*Affirmed on remittitur.*